LENA LARSON *vs.* CHARLES A. CHASE, impleaded, etc.

November 10, 1891.

47   307
58   262
47   307
176   377
47   307
§14LRA854n
52LRA621n
47   307
85   513

Right to Possession of Dead Body—Surviving Husband or Wife—Next of Kin.—The right to the possession of a dead body for the purposes of preservation and burial belongs, in the absence of any testamentary disposition, to the surviving husband or wife or next of kin, and the right of the surviving wife (if living with her husband at the time of his death) is paramount to that of the next of kin.

Same—Action to Protect Right—Damages for Mutilation—Injury to Feelings.—This right is one which the law recognizes and will protect, and for any infraction of it,—such as an unlawful mutilation of the remains,—an action for damages will lie. In such an action a recovery may be had for injury to the feelings and mental suffering resulting directly and proximately from the wrongful act, although no actual pecuniary damage is alleged or proved.

Appeal by defendant Chase (impleaded with Pearl M. Hall) from an order of the district court for Hennepin county, *Hooker*, J., presiding, overruling his separate demurrer to the complaint in an action to recover $5,000 damages for injuries to plaintiff's feelings

and sensibilities caused by the defendant's alleged unlawful dissection of the body of her dead husband.

*Bradish & Dunn* and *Babcock & Garrigues*, for appellant.

*Arctander & Arctander*, for respondent.

MITCHELL, J.   This was an action for damages for the unlawful mutilation and dissection of the body of plaintiff's deceased husband. The complaint alleges that she was the person charged with the burial of the body, and entitled to the exclusive charge and control of the same.   The only damages alleged are mental suffering and nervous shock.   A demurrer to the complaint, as not stating a cause of action, was overruled, and the defendant appealed.

The contentions of defendant may be resolved into two propositions :   *First.* That the widow has no legal interest in or right to the body of her deceased husband, so as to enable her to maintain an action for damages for its mutilation or disturbance ; that, if any one can maintain such an action, it is the personal representatives. *Second.* That a dead body is not property, and that mental anguish and injury to the feelings, independent of any actual tangible injury to person or property, constitute no ground of action.

Time will not permit, and the occasion does not require, us to enter into any extended discussion of the history of the law, civil, common, or ecclesiastical, of burial and the disposition of the body after death. A quite full and interesting discussion of the subject will be found in the report of the referee (Hon. S. B. Ruggles) in the *Matter of the Widening of Beekman Street*, 4 Bradf. Sur. 503.   See, also, *Peirce* v. *Proprietors*, 10 R. I. 227;  19 Am. Law Rev. 251;  10 Alb. Law J. 71.   Upon the questions who has the right to the custody of a dead body for the purpose of burial, and what remedies such person has to protect that right, the English common-law authorities are not. very helpful or particularly in point, for the reason that from a very early date in that country the ecclesiastical courts assumed exclusive jurisdiction of such matters.   It is easy to see, therefore, why the common law in its early stages refused to recognize the idea of property in a corpse, and treated it as belonging to no one unless it was the church.   The repudiation of the ecclesiastical law and of ecclesiastical courts by the American colonies left the temporal courts the

sole protector of the dead, and of the living in their dead. Inclined to follow the precedents of the English common law, these courts were at first slow to realize the changed condition of things, and the consequent necessity that they should take cognizance of these matters and administer remedies as in other analogous cases. This has been accomplished by a process of gradual development, and all courts now concur in holding that the right to the possession of a dead body for the purposes of decent burial belongs to those most intimately and closely connected with the deceased by domestic ties, and that this is a right which the law will recognize and protect. The general, if not universal, doctrine is that this right belongs to the surviving husband or wife or to the next of kin; and, while there are few direct authorities upon the subject, yet we think the general tendency of the courts is to hold that, in the absence of any testamentary disposition, the right of the surviving wife (if living with her husband at the time of his death) is paramount to that of the next of kin. This is in accordance, not only with common custom and general sentiment, but also, as we think, with reason. The wife is certainly nearer in point of relationship and affection than any other person. She is the constant companion of her husband during life, bound to him by the closest ties of love, and should have the paramount right to render the last sacred services to his remains after death. But this right is in the nature of a sacred trust, in the performance of which all are interested who were allied to the deceased by the ties of family or friendship, and, if she should neglect or misuse it, of course the courts would have the power to regulate and control its exercise. We have no doubt, therefore, that the plaintiff had the legal right to the custody of the body of her husband for the purposes of preservation, preparation, and burial, and can maintain this action, if maintainable at all.

The doctrine that a corpse is not property seems to have had its origin in the *dictum* of Lord Coke, (3 Inst. 203,) where, in asserting the authority of the church, he says: "It is to be observed that in every sepulchre that hath a monument two things are to be considered, viz., the monument, and the sepulture or burial of the dead. The burial of the cadaver that is *caro data vermibus* [flesh given to

worms] is *nullius in bonis*, and belongs to ecclesiastical cognizance; but as to the monument action is given (as hath been said) at the common law, for defacing thereof." If the proposition that a dead body is not property rests on no better foundation than this etymology of the word "cadaver," its correctness would be more than doubtful. But while a portion of this *dictum*, severed from its context, has been repeatedly quoted as authority for the proposition, yet it will be observed that it is not asserted that no individual can have any legal interest in a corpse, but merely that the burial is *nullius in bonis*, which was legally true at common law at that time, as the whole matter of sepulture and custody of the body after burial was within the exclusive cognizance of the church and the ecclesiastical courts. But whatever may have been the rule in England under the ecclesiastical law, and while it may be true still that a dead body is not property in the common commercial sense of that term, yet in this country it is, so far as we know, universally held that those who are entitled to the possession and custody of it for purposes of decent burial have certain legal rights to and in it, which the law recognizes and will protect. Indeed, the mere fact that a person has exclusive rights over a body for the purposes of burial leads necessarily to the conclusion that it is his property in the broadest and most general sense of that term, viz., something over which the law accords him exclusive control. But this whole subject is only obscured and confused by discussing the question whether a corpse is property in the ordinary commercial sense, or whether it has any value as an article of traffic. The important fact is that the custodian of it has a legal right to its possession for the purposes of preservation and burial, and that any interference with that right, by mutilating or otherwise disturbing the body, is an actionable wrong. And we think it may be safely laid down as a general rule that an injury to any right recognized and protected by the common law will, if the direct and proximate consequence of an actionable wrong, be a subject for compensation.

It is also elementary that while the law as a general rule only gives compensation for actual injury, yet, whenever the breach of a contract or the invasion of a legal right is established, the law infers

some damage, and, if no evidence is given of any particular amount of loss, it declares the right by awarding nominal damages.  Every injury imports a damage.  Hence the complaint stated a cause of action for at least nominal damages.  We think it states more.  There has been a great deal of misconception and confusion as to when, if ever, mental suffering, as a distinct element of damage, is a subject for compensation.  This has frequently resulted from courts giving a wrong reason for a correct conclusion that in a given case no recovery could be had for mental suffering, placing it on the ground that mental suffering, as a distinct element of damage, is never a proper subject of compensation, when the correct ground was that the act complained of was not an infraction of any legal right, and hence not an actionable wrong at all, or else that the mental suffering was not the direct and proximate effect of the wrongful act.  Counsel cites the leading case of *Lynch* v. *Knight*, 9 H. L. Cas. 577, 598.  We think he is laboring under the same misconception of the meaning of the language used in that case into which courts have not infrequently fallen.  Taking the language in connection with the question actually before the court, that case is not authority for defendant's position.  It is unquestionably the law, as claimed by appellant, that "for the law to furnish redress there must be an act which, under the circumstances, is wrongful; and it must take effect upon the person, the property, or some other legal interest, of the party complaining.  Neither one without the other is sufficient."  This is but another way of saying that no action for damages will lie for an act which, though wrongful, infringed no legal right of the plaintiff, although it may have caused him mental suffering.  But, where the wrongful act constitutes an infringement on a legal right, mental suffering may be recovered for, if it is the direct, proximate, and natural result of the wrongful act.  It was early settled that substantial damages might be recovered in a class of torts where the only injury suffered is mental,—as, for example, an assault without physical contact.  So, too, in actions for false imprisonment, where the plaintiff was not touched by the defendant, substantial damages have been recovered, though physically the plaintiff did not suffer any actual detriment.  In an action for seduction substantial damages are al-

lowed for mental sufferings, although there be no proof of actual pecuniary damages other than the nominal damages which the law presumes. The same is true in actions for breach of promise of marriage. Wherever the act complained of constitutes a violation of some legal right of the plaintiff, which always, in contemplation of law, causes injury, he is entitled to recover all damages which are the proximate and natural consequence of the wrongful act. That mental suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated, is too plain to admit of argument. In *Meagher* v. *Driscoll*, 99 Mass. 281, where the defendant entered upon plaintiff's land, and dug up and removed the dead body of his child, it was held that plaintiff might recover compensation for the mental anguish caused thereby. It is true that in that case the court takes occasion to repeat the old saying that a dead body is not property, and makes the gist of the action the trespass upon plaintiff's land; but it would be a reproach to the law if a plaintiff's right to recover for mental anguish, resulting from the mutilation or other disturbance of the remains of his dead, should be made to depend upon whether, in committing the act, the defendant also committed a technical trespass upon plaintiff's premises, while everybody's common sense would tell him that the real and substantial wrong was not the trespass on the land, but the indignity to the dead.

Order affirmed.