JANE DARCY, Appellant, v. THE PRESBYTERIAN HOSPITAL IN THE CITY OF NEW YORK, Respondent.

Dead Bodies — right to possession of dead body for preservation and burial — who entitled thereto — action by mother to recover for unauthorized autopsy on body of deceased son.

1. The right to the possession of a dead body for the purpose of preservation and burial belongs to the surviving husband or wife or next of kin, in the absence of any testamentary disposition; and this right the law will recognize and protect from any unlawful mutilation of remains by awarding damages for injury to the feelings and mental suffering resulting from the wrongful acts, although no pecuniary damage is alleged or proved.

2. A complaint which alleges " that immediately after the decease of her son the mother, the nearest surviving next of kin, demanded of the defendant his body and sent an undertaker for it; but that the defendant refused to deliver it until after it had caused the coroner to send his physician to make an autopsy on the body, and after the plaintiff had refused her consent to such autopsy," states a cause of action.

*Darcy* v. *Presbyterian Hospital*, 137 App. Div. 924, reversed.

(Argued May 9, 1911; decided May 30, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 9, 1910, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term on the ground that it did not state facts sufficient to constitute a cause of action.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Carlisle Norwood* for appellant. The nearest relative of a person deceased, there being no husband or wife, has a right to the immediate possession of the body for the purpose of burial, and to receive it in the condition in which it is at death. (*Foley* v. *Phelps,* 1 App. Div. 551; *Jackson* v. *Savage,* 109 App. Div. 556; *Cohen* v. *Congregation,* 85 App. Div. 65; *Buchanan* v. *Buchanan,* 28 Misc. Rep. 261; *Kyles* v. *Southern Railway Co.,* 61 S. E. Rep. 278; *Larson* v. *Chase,* 47 Minn. 307; *Koeber* v. *Patek,* 123 Wis. 453; *Burney* v. *Children's Hospital,* 169 Mass. 57; *L. & N. R. R. Co.* v. *Wilson,* 123 Ga. 62.) The rights of relatives in their dead are, aside from the common law, carefully protected by statute against an autopsy by the coroner or any one else excepting in specifically authorized cases. (Penal Code, § 309; L. 1901, ch. 466, § 1773.)

*Robert Thorne* and *Herbert K. Stockton* for respondent. The complaint does not state facts sufficient to constitute a cause of action against this defendant. In default of any allegations in the complaint showing that the coroner's physician, in performing this autopsy, was acting unlawfully or in excess of his authority, it will be presumed that he was acting under and in accordance with the laws of this state. (4 Ency. of Pl. & Pr. 746; *Fry* v. *Bennett,* 28 N. Y. 324; *Magauran* v. *Tiffany,* 62 How. Pr. 251; *Fairbanks* v. *Bloomfield,* 2 Duer, 349.)

HAIGHT, J. This action was brought to recover damages for the interference and prevention of the plaintiff of her right to receive the body of her deceased son from the defendant, and for wounded feelings and mental distress suffered by reason of the mutilation and dissection of his body. Upon the trial the complaint was dismissed

at the opening of counsel on the ground that it did not state sufficient facts to constitute a cause of action.

The complaint alleges, in substance, that she was the mother of John Darcy who died at the defendant's hospital on the 31st day of October, 1906, at the age of twenty years, unmarried and without children; that his father had died several years before, leaving the plaintiff, his mother, as his next of kin and entitled to the possession of his body for burial. The decedent was taken to the defendant's hospital on the 24th day of September, 1906, by the plaintiff, to receive treatment for ailments with which he was then afflicted, she agreeing with the agent of the hospital to pay one dollar per day for such treatment; that immediately after the decease of her son the plaintiff asked the superintendent of the hospital for his body and sent an undertaker for the same, for the purpose of interment, but the defendant refused and neglected to then deliver the body to her; that the superintendent and one Robert Anderson Cooke, a physician in charge of the hospital, asked for her consent to make an autopsy, which she expressly refused to permit, and thereupon Cooke, with the cognizance and approval of the defendant, caused a coroner of the city of New York to send his physician to the hospital, and there, in the presence of Cooke and several other surgeons, performed an autopsy on the body of the decedent, thus depriving her of the right to the possession of the body for burial, greatly wounding her feelings and causing her great mental distress, anguish, etc.

The first question presented for determination is as to whether a cause of action for damages exists. Under the allegations of the complaint, the mother of the decedent was his nearest and only next of kin, and consequently was the person who was entitled to his body for burial. It must be conceded that in some jurisdictions it has been held that since there can be no property in a dead body, a personal representative of decedent cannot

maintain an action for damages for the willful or negligent mutilation of the body, although he may sue for injury to the wearing apparel. (13 Cyc. 281, citing *Griffith* v. *Charlotte*, 23 S. C. 25; 55 Am. Rep. 1.) This was doubtless the rule under the ecclesiastical law of England, as appears from the remarks of Lord Coke. (3 Inst. 203; 2 Bl. Com. 429.)

While we adopted the common law in organizing our state governments, we have never considered ourselves bound by the ecclesiastical decisions, many of which were inapplicable to our form of government. But even in England, in more recent periods, the courts have recognized the right of possession of a dead body in those nearest in relation for the purpose of burial or other lawful disposition of it. (*Queen* v. *Fox*, 2 Ad. & El. (N. S.) 246.

The most elaborate consideration of the question in the courts of this country appears in the case of *Larson* v. *Chase* (47 Minn. 307), in which, after an examination of the authorities both in this country and in England, the conclusion is reached that while no action can be maintained by the executor or administrator upon the theory of any property right in a decedent's body, the right to the possession of a dead body for the purpose of preservation and burial belongs to the surviving husband or wife or next of kin, in the absence of any testamentary disposition; and this right the law will recognize and protect from any unlawful mutilation of remains by awarding damages for injury to the feelings and mental suffering resulting from the wrongful acts, although no pecuniary damage is alleged or proved. This case has been followed in Massachusetts, in the case of *Burney* v. *Children's Hospital* (169 Mass. 57), in which it was held that the father of a child, who is its natural guardian, has a right, in case the child dies, to the possession of its body for burial, and may maintain an action for an unauthorized autopsy performed upon the body of the

child. (Citing *Meagher* v. *Driscoll*, 99 Mass. 281, and numerous other cases therein referred to.)

In 4 American Law Times, 127, it was held, in Ohio, that a husband might recover damages for the maltreating of the dead body of his wife by physicians to whom the body had been delivered for the purpose of dissecting and examining the throat; and in our state it has been held that a widow has the right to the possession of the body of her deceased husband, and that she may recover damages for an unauthorized dissection of his remains. (*Foley* v. *Phelps*, 1 App. Div. 551.)

We shall not at this time attempt a further discussion of the question, for there is little which we can add by way of argument to that which has already been well stated in the cases to which reference has been made. The rule adopted in the Minnesota case fully meets our approval, and consequently the plaintiff, being the mother and the nearest surviving next of kin to the decedent, is entitled to maintain the action and to recover damages for her wounded feelings and mental distress.

It is contended, however, on behalf of the defendant, that the complaint does not state a cause of action. The plaintiff, as we have seen, clearly alleges that immediately after the decease of her son she demanded of the defendant his body, and sent an undertaker for it; but that the defendant refused to deliver it until after it had caused the coroner to send his physician to make an autopsy on the body, and that, after the plaintiff had refused her consent to such autopsy.

Section 2213 of the Penal Law provides that "The right to dissect the dead body of a human being exists in the following cases:

"1. In the cases prescribed by special statutes; or

"2. Whenever a coroner is authorized by law to hold an inquest upon a body, so far as such coroner authorizes dissection for the purposes of the inquest, and no further; or,

"3. Whenever and so far as the husband, wife or next

of kin of the deceased, being charged by law with the duty of burial, may authorize dissection for the purpose of ascertaining the cause of death, and no further; or,

"4. Whenever any district attorney in this state, in the discharge of his official duties, shall deem it necessary," etc.

Section 2214 provides that "A person who makes, or causes or procures to be made, any dissection of the body of a human being, except by authority of law, or in pursuance of a permission given by the deceased, is guilty of a misdemeanor."

The duties of a coroner, are as follows:

"Whenever a coroner is informed that a person has been killed or dangerously wounded by another, or has suddenly died *under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means,* or has committed suicide, he must go to the place where the person is and forthwith inquire into the cause of the death, or wounding, and in case such death, or wounding, occurred in a county in which is situated in whole, or in part, a city having a population of more than five hundred thousand as appears by the last state enumeration, but not otherwise, summon not less than nine, nor more than fifteen persons, qualified by law to serve as jurors, to appear before him forthwith, at a specified place, to inquire into the cause of the death," etc. (Code of Criminal Procedure, section 773.)

It is further provided that "A coroner shall have power, when necessary, to employ not more than two competent surgeons to make post mortem examinations and dissections and to testify to the same, the compensation therefor to be a county charge. This section also applies to the county of New York." (County Law, section 194.)

Under the Consolidated Laws of the city of New York (L. 1882, Ch. 410, § 1773) the coroner was made a public officer in whom was reposed the duty of investigating

the cause of death where any person shall die *in a suspicious or unusual manner*, and in such case it was his duty to require one of the coroner's physicians to view the body of the deceased or perform an autopsy thereon as may be required. And under section 1775, chapter 846 of the Laws of 1895, it was made the duty of any citizen who should become aware of the death of any person who died in a suspicious or unusual manner to report the death forthwith to one of the coroners, or to the clerk in attendance at the coroners' office. And by section 1571 of the Greater New York charter the above was continued in force.

It thus appears from the provisions of the statute referred to that an unauthorized autopsy is prohibited and made a misdemeanor, and there is nothing in the allegations of the complaint that indicates that the decedent died in a suspicious or unusual manner, or that there was reasonable ground to suspect that his death had been occasioned by criminal means or the act of another. We are, consequently, of the opinion that the complaint stated a cause of action.

It may be that upon the trial of this case the defendant will be able to show that the decedent died in a suspicious and unusual manner, and that there was reasonable ground to suspect that his death was occasioned by criminal means. If so, it was its duty to notify the coroner, and it then became the duty of that officer to investigate, either in person or by his physician, the clinical history of the case, and if he then had grounds to suspect criminal agency had caused death, to hold the body for autopsy. But these are matters of defense and are no part of the plaintiff's original case.

The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur; HISCOCK, J., absent.

Judgment reversed, etc.