Frederick Mensinger, Plaintiff in Error, v. Leonard
D. O'Hara and Patrick Kehoe, copartners as O'Hara
& Kehoe, Defendants in Error.

Gen. No. 19,689.

1. NEGLIGENCE, § 121*—*when words in declaration sufficient to
charge wilful misconduct.* Although the words "wrongfully and un-
lawfully" in a declaration, standing alone, do not necessarily charge
wilful misconduct, yet where they were followed by the words
"procured, assisted, aided and abetted," and the act charged was
in the nature of a deliberate trespass, it was *held* that the declara-
tion was sufficient to support a cause of action for wilful misconduct
and not mere negligence, especially in the absence of an averment
of negligence.

2. DEAD BODIES, § 1*—*who entitled to possession and control.*
While a dead body is not "property" in the ordinary, technical
meaning of that term, the law recognizes a right, in the nature of
a property right, arising out of the duty of the nearest relatives to
bury their dead, to take possession of the remains. This is an ex-
clusive right that, in the absence of any testamentary disposition,
belongs to the surviving spouse, if any, and if none, to the next of
kin.

3. DEAD BODIES—*when declaration states cause of action for wil-
ful and wanton trespass.* In a suit brought by a surviving husband
for the mutilation of the body of his deceased wife by the under-
takers, the declaration alleged the defendants "wrongfully and
unlawfully procured, assisted, aided and abetted in cutting off and
removing the hair from the head of the said dead body and other-
wise mutilating the same," in consequence whereof the remains
"were rendered unfit to be viewed by the plaintiff and his relatives
and friends," whereby "the plaintiff suffered greatly, both in mind
and in body, and great indignity, insult and humiliation were put
upon him." *Held,* that the declaration stated a cause of action for
wilful and wanton trespass and not mere negligence.

4. DEAD BODIES—*right of action for intentional mutilation.* The
intentional mutilation of a dead body will support an action on
the case against the wrongdoer on behalf of the person entitled
to the exclusive custody and possession of the corpse for purposes
of burial.

5. DAMAGES, § 28*—*when recoverable for mental suffering.* In
an action by the husband for the wilful mutilation of the dead
body of his wife, damages are recoverable for mental suffering

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

proximately resulting from the wrongful act, even though no actual pecuniary loss is alleged or proved.

Error to the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded with directions. Opinion filed October 8, 1914. Rehearing denied October 20, 1914.

ARTHUR A. HOUSE, for plaintiff in error; LYNN, BAUMER & HOUSE and NATHAN E. UTT, of counsel.

WEST & ECKHART, for defendants in error.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

The Circuit Court sustained a general demurrer to the amended declaration of the plaintiff in this case. The plaintiff stood by his declaration and a judgment was rendered against him for costs, whereupon he sued out this writ of error.

The declaration, as amended, states that on April 5, 1909, the plaintiff was the devoted husband of Maude S. Mensinger, with whom he had lived for a long time; that on that day she died, and the plaintiff, "being under the duty and obligation to bury her, and having the right to bury her remains in the same condition as when death occurred," placed the remains in the hands of the defendants, O'Hara and Kehoe, who were undertakers, and of the defendant Maxon, their servant, for the purpose of preparing the same for burial, and the defendants took possession of the dead body for that purpose; that at the time of her death, the plaintiff's wife was possessed of a beautiful head of hair, very thick and of great length; that without the knowledge or consent of the plaintiff, the defendants "wrongfully and unlawfully procured, assisted, aided and abetted in cutting off and removing the hair from the head of the said dead body and otherwise mutilating the same;" that in consequence thereof, the remains

"were rendered unfit to be viewed by the plaintiff and his relatives and friends," and that thereby "the plaintiff suffered greatly, both in mind and in body, and great indignity, insult and humiliation were put upon him;" wherefore, "the plaintiff says he is injured and has sustained damage," etc.

It will be noted that this declaration contains no specific averment charging, in terms, that the wrongful act complained of was wilfully or wantonly committed. The words "wrongfully and unlawfully," standing alone, do not ordinarily convey the impression that a wilful or wanton act is intended to be charged. Neither of these words means the same thing as the word "wilfully." "Unlawfully doing a thing is not synonymous with wilfully doing it. A man may do many things wilfully, which are not unlawful, and he may do things unlawfully which are not wilfully done." *State of Maine v. Hussey,* 60 Me. 410. The same observation is true as to a statement that an act is "wrongfully" done. *Jeffersonville, M. & I. R. Co. v. Riley,* 39 Ind. 568, 587; *Green v. Eden,* 24 Ind. App. 583. It does not follow, therefore, from the mere averment that the act complained of was done wrongfully and unlawfully, that it may not have been ignorantly, thoughtlessly or negligently done. But these words in the declaration are followed immediately by the words "procured, assisted, aided and abetted in cutting off and removing the hair," etc. The word "procured" imports design or intention. It means "to bring about by care and pains." (Century Dictionary.) The words "wrongfully procured" import "an initial, active and wrongful effort." *Nash v. Douglass,* 12 Abb. Pr. (N. S.) 187, 190. The words "assisted, aided and abetted" import either active participation or cooperation, or intentional encouragement. Furthermore, there is no averment in the declaration that the act complained of was negligently done, and the act described is not a mere omission of duty. It is an

affirmative act, in the nature of a deliberate trespass. A large and heavy head of hair cannot be "cut off and removed" from a dead body by mere neglect. Such an act necessarily requires a physical effort, intentionally performed. It could not happen by chance. It could only be accomplished by design. The declaration does not charge that the defendants personally performed the act, unless the word "assisted" may be construed to have that meaning. The fact that all four of the words "procured, assisted, aided and abetted" are used by the pleader indicates an intention to charge that the defendants *directed or caused* the act to be done by some person other than themselves. In any event, however, whether they directed it to be done by others and thus "procured" it to be done, or personally "assisted" in doing it, they must have done so knowingly and intentionally. If an injurious act is knowingly and intentionally done, it is wilfully done. "The word 'wilfully' is synonymous with 'knowingly.' The two words are equivalents." *Peebles v. O'Gara Coal Co.,* 239 Ill. 370, 374. In *Catlett v. Young,* 143 Ill. 74, 81, it was said: "We think it was not error to instruct the jury that by a wilful violation of the law is meant a violation of its provisions, knowingly and deliberately committed." If the declaration had specifically charged that the defendants wilfully cut off and removed the hair from the dead body, it would not be necessary to prove, in order to sustain that averment, that the act was committed with any *evil* intent. It would only be necessary to show that it was intentionally committed, with knowledge of what they were doing, and not from mere inadvertance. *Odin Coal Co. v. Denman,* 185 Ill. 413; *Illinois Cent. R. Co. v. Leiner,* 202 Ill. 624, 630.

We conclude, therefore, that in view of the nature of the wrongful act complained of, and the words employed in the declaration to describe the act and to characterize the manner in which the act was done, the

averments of the declaration amount to a charge of wilful misconduct on the part of the defendants.

Upon the assumption that the declaration contains no allegation of wilful or wanton misconduct and that negligence only is charged, counsel for defendants in error cite many authorities both for and against the proposition that "the negligent causing of mental anguish alone is not an actionable wrong." In their argument on this point, they contend that the great weight of authority favors the view that damages for mental suffering may be recovered only in two classes of cases: First, when the mental suffering is the inseparable accompaniment and result of some physical injury and bodily pain proximately caused by the negligent act complained of; and second, "when the wrongful act producing the injury is done wilfully or maliciously, *and the injury is one for which substantial damages are recoverable irrespective of mental anguish.*" After a careful examination of the authorities on this question, in the light of the able and scholarly presentation of the subject by counsel, we are of the opinion that the italicized portion of counsel's contention is not well supported, either by reason or authority. It is true that in some of the cases cited by counsel, as well as in others referred to in such cases, the right to recover damages for mental suffering, even in case of a wilful wrong, is placed upon the ground that some slight pecuniary loss, as well as mental anguish, was alleged to have resulted from the wrongful act. For example, in an early case in Massachusetts, where the defendant entered upon the plaintiff's land and dug up and removed the dead body of his child, the court, in holding that the plaintiff might recover compensation for the mental suffering caused thereby, grounded his right of recovery upon the trespass to the plaintiff's land. *Meagher v. Driscoll,* 99 Mass. 281. But, as is most pertinently and truly said by the Supreme Court of Minnesota, in *Larson v. Chase,* 47 Minn. 307: "It

would be a reproach to the law if a plaintiff's right to recover for mental anguish, resulting from a mutilation or other disturbance of the remains of his dead, should be made to depend upon whether, in committing the act, the defendant also committed a technical trespass upon plaintiff's premises, while everybody's common sense would tell him that the real and substantial wrong was not the trespass on the land, but the indignity to the dead.''

The mind instinctively revolts at the mere suggestion that any well ordered system of jurisprudence should find it necessary to resort to so flimsy a subterfuge in order to sustain a recovery of substantial damages for such a tort, when wilfully or wantonly committed. We are reminded, however, that the common law is still in force in this State, except as changed by statute, that the common law protects only ''the person and the purse.'' (*Chapman v. Western U. Tel. Co.*, 88 Ga. 763, 772), that the common law did not recognize any right of property in the dead body of a human being, and that as yet we have no statute in this State which changes the common-law rule in that respect. If it were necessary in this case for us to point out the fallacy in this reasoning, we apprehend that it would not be very difficult to find good reasons for holding that the right of a surviving husband to the undisturbed possession and control of his wife's remains may well be included in the category of personal rights, as now recognized by the law of this State. It is unnecessary, however, to go that far in this case. The decided weight of authority in this country supports the proposition that while a dead body is not considered as property, in the ordinary, technical sense in which that word is usually employed, yet the law does recognize a right, somewhat akin, perhaps, to a property right, arising out of the duty of the nearest relatives of the deceased to bury their dead, which authorizes and requires them to take possession and

control of the dead body for the purpose of giving it a decent burial. This right is an exclusive right to the custody and possession of the remains, and in the absence of any testamentary disposition, belongs to the surviving husband or wife, if any, or if there be none, then to the next of kin. The greater weight of authority also holds that any wilful or wanton infringement of this recognized legal right, by the intentional mutilation of the body of the deceased, will subject the wrongdoer to an action on the case for damages, and that in such action damages will be allowed for any mental suffering proximately resulting from the wrongful act, even though no actual pecuniary loss be alleged or proved. *Larson v. Chase,* 47 Minn. 307; *Lindh v. Great Northern Ry. Co.,* 99 Minn. 408; *Beaulieu v. Great Northern Ry. Co.,* 103 Minn. 47; *Burney v. Children's Hospital,* 169 Mass. 57; *Darcy v. Presbyterian Hospital,* 202 N. Y. 259; *Hassard v. Lehane,* 143 App. Div. (N. Y.) 424; *Louisville & N. R. Co. v. Wilson,* 123 Ga. 62; *Renihan v. Wright,* 125 Ind. 536; *Koerber v. Patek,* 123 Wis. 453; *Wilson v. St. Louis & S. F. R. Co.,* 160 Mo. App. 649; *Birmingham Transfer & Traffic Co. v. Still,* 7 Ala. App. 556; *Palenzke v. Bruning,* 98 Ill. App. 644.

In all but one of the cases last cited, the facts, as recited in the opinions, show that the wrong complained of was wilfully or wantonly committed; and in the single exception (that of *Larson v. Chase, supra*) the facts in this respect are not fully set forth in the opinion. In several of the cases, a doubt is expressed as to whether a recovery may be had for mental suffering, alone, in the absence of any allegation or proof of wilful or wanton misconduct. For example, in *Koerber v. Patek, supra,* while affirming the right to recover substantial damages for mental suffering under a complaint which alleged that the defendant had wilfully and maliciously cut out, removed and carried away the stomach from the dead body of the plaintiff's

mother, the Supreme Court of Wisconsin takes occasion to say (p. 463):

"We recognize the difficulties in the way of sustaining any action for *mere negligence* resulting in no pecuniary damage. In such case the injury to feelings of survivors not being legal damage, at least in Wisconsin, no recoverable damage results from mere negligence in such cases. That situation, however, is not here presented, *for. the defendant's act is alleged to have been wilful.*" (Italics ours)

The leading case on this subject is that of *Larson v. Chase, supra,* which was an action brought by a widow to recover damages for the unlawful dissection of the body of her dead husband. The only damages alleged in the complaint were mental suffering and nervous shock. In that case the Court, after holding that the widow had the legal right to the custody of the dead body of her husband for the purposes of preservation and burial, discusses at length the nature of that right. On page 310 of the opinion it is said:

"But this whole subject is only obscured and confused by discussing the question whether a corpse is property in the ordinary commercial sense, or whether it has any value as an article of traffic. The important fact is that the custodian of it has a legal right to its possession for the purposes of preservation and burial, and that any interference with that right, by mutilating or otherwise disturbing the body, is an actionable wrong. And we think it may be safely laid down as a general rule that an injury to any right recognized and protected by the common law will, if the direct and proximate consequence of an actionable wrong, be a subject for compensation."

Further on in the same opinion, the Court reaches the following conclusion (p. 412):

"Wherever the act complained of constitutes a violation of some legal right of the plaintiff, which always, in contemplation of law, causes injury, he is entitled to recover all damages which are the proximate and natural consequence of the wrongful act. That mental

suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated, is too plain to admit of argument.''

In a later case before the same court, the doctrine so clearly and logically expressed seems to be qualified by the apparent recognition of a limitation upon the right to recover damages for mental suffering in such cases by confining that right to cases in which a wilful or wanton act is alleged and proved. *Beaulieu v. Great Northern Ry. Co., supra.* In that case the Court said (p. 51):

''Though the common law recognizes no property in the bodies of deceased persons * * * a right of possession and preservation for burial purposes is conceded by nearly all the authorities, which the law will protect'' (citing authorities). ''And any *wilful or wrongful interference* with that right *by the intentional mutilation or secretion of the body* subjects the wrong-doer to an action on the case, in the determination of which mental anguish is a proper element for consideration in assessing damages.'' (Italics ours.)

The Court adhered, however, to the general principle of the *Larson* case, *supra,* by stating further on in the same opinion (p. 52):

''There being no property in dead bodies, and the wrong complained of being only the invasion of an intangible legal right, no actual damages for the wrongful mutilation of the body can be recovered, and the courts award solatium for the bereavement of the next of kin as the only appropriate relief. Without the element of mental distress, the action would be impotent of results and of no significance or value as a remedy for the tortious violation of the legal right of possession and preservation.''

There is another class of cases, beginning with the case of *So Relle v. Western U. Tel. Co.,* 55 Tex. 308, and followed by decisions in Alabama, Kentucky, North Carolina, Tennessee and Iowa, in which the right to recover damages for mental suffering, resulting from the failure of a telegraph company to promptly de-

liver a message relating to a death or a funeral, was sustained. So far as we are advised, this doctrine has not been recognized in this State, and it has been repudiated in many of the other States and by the Federal Courts. See *Wilson v. St. Louis & S. F. R. Co., supra,* and *Chapman v. Western U. Tel. Co., supra,* where many of such cases are cited. Whether the so-called "Texas doctrine" is supported by the better reason and the weight of authority, we need not stop to inquire. That doctrine has no necessary or controlling application to the facts of this case, where the wrongful act is alleged to have been intentionally committed.

The only case in Illinois to which our attention has been directed, which is at all similar to the present case, is that of *Palenzke v. Bruning, supra.* In that case a father sued the coroner for damages for mental suffering caused by the alleged wanton, malicious and wrongful mutilation of the body of the plaintiff's minor son. The court held the action could be maintained for the wilful violation of the plaintiff's right to the possession of the remains. We are of the opinion that the decision in that case is fully supported by the great weight of authority, and that the present case is one which, upon the pleadings before us, is governed by the same legal principles announced in that case.

For the reasons stated, the judgment of the Circuit Court will be reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded with directions.*