## ÆTNA LIFE INS. CO. v. LINDSAY.
### No. 4985.

Circuit Court of Appeals, Seventh Circuit.

Feb. 13, 1934.

Rehearing Denied March 30, 1934.

William E. Wheeler, Martin F. Oehmke, and William C. Dunham, all of East St. Louis, Ill., for appellant.

Ralph F. Lesemann, Harold G. Baker, and K. C. Ronalds, all of East St. Louis, Ill., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a judgment for $5,-000 awarded appellee as her damages occasioned through the disinterment of and autopsy upon the body of her father, Charles E. Webber, procured to be done by appellant without appellee's consent.

The father, at his death on May 13, 1930, held two policies of accident insurance issued by appellant, one, called "Acme Accident Policy," dated June 27, 1918, for $10,000, with his wife the beneficiary; the other, called "Ticket Policy," of date May 11, 1930, for $5,000, payable in case of his accidental death to his executors, administrators, or assigns. Each of the policies insured against loss resulting, wholly and independently of all other causes, solely through external and accidental means.

The Acme policy specified: "This insurance does not cover in event of accident or any loss specified in this policy, resulting wholly or partly, directly or indirectly, from bodily or mental infirmity, or disease in any form, or bacterial infection * * *."

The Ticket policy provided: "f. This insurance shall not cover * * * accidental injury, disability, dismemberment or death caused directly or indirectly, wholly or partly, by any of the following, to wit: * * * disease in any form, fits, vertigo * * *."

Each policy contained a provision in full conformance with paragraph 8 of the "Standard Provisions" of the Illinois statute respecting the form for accident insurance policies, as follows: "8. The Company shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law." Smith-Hurd Rev. St. 1933, c. 73, § 364, subd. 8, Cahill's Ill. Rev. Stat. c. 73, par. 469, subd. 8.

On May 11 deceased and his wife went from Eldorado, Ill., where they had long resided, to visit at Malden, Mo., about 150 miles from Eldorado, and on the 13th he went fishing there with friends. Near the close of the day he became separated from the others, and was found dead, partly submerged in water, face downward. Inquest was held at Malden, and the body sent back to Eldorado on the 14th, where, at 2 o'clock p. m. of the 16th, it was interred in a nearby cemetery. His will named his wife as executrix, and she duly qualified as such. Appellee, their only child, had, with her husband, long resided with her parents.

On the morning of May 16, the person at Eldorado who had placed the insurance and collected the premiums called at the home of the deceased and asked for and received the policies, saying he would take care of the matter for the widow; and he wired the company's home office at Hartford, Conn., saying that deceased was "Drowned Thirteenth Near Malden Mo Coroners Verdict Accidental Death Will Be Buried Two Oclock Today." On the telegram appears stamped, "Received at Hartford, Conn. 1930 May 16 PM 12 31."

The company sent on its agent to investigate the claim, and as a result of the investigation it was decided that an autopsy was necessary. The representative of the company went to Eldorado on June 11, 1930, and requested Mrs. Webber's consent to an autopsy. He presented two forms to her, one for consent thereto and one for refusal of such consent. He talked with her in the presence of her sister and of appellee's husband. She did not sign that day, and the representative departed leaving the forms with them, and saying he would call the next day. When he came the next day she executed and delivered the consent, her sister and son-in-law signing as witnesses. The consent is: "I, Mrs. Nancy E. Webber, wife of Charles E. Webber, deceased, hereby grant to the Ætna Life Insurance Company of Hartford, Connecticut, the right and opportunity to make an autopsy on the body of my deceased husband, Charles E. Webber, on a date to be found to be convenient to the Ætna Life Insurance Company representatives."

Thereupon the company's investigator arranged with a local undertaker to disinter the body, and on June 20, 1930, the autopsy

was performed. On behalf of the family three doctors, one of them a pathologist from Evansville, Ind., were present, and the son-in-law was present "probably a third or maybe a half of the time." On behalf of the company there were two persons present besides the doctor performing the autopsy.

There was evidence indicating that appellee, some days before the autopsy, told the undertaker that she objected to it and would hold him responsible if it was made, and it may be assumed that her consent thereto or to the disinterment was not given. The undertaker so informed the company, requesting that he be indemnified in making the disinterment, and the company agreed to indemnify him.

A few months after the autopsy the company made settlement of the policies with Mrs. Webber. On April 22, 1932, this suit was brought by appellee.

At the close of the evidence each party moved the court to instruct the jury to find a verdict in its favor. The court's charge thereupon given the jury, after reciting the above paragraph 8 of the policies and of the statutory form therefor, proceeded: "The Court instructs the jury that under the evidence in this case, this provision of the Statute and the provision of the policy which has been read to the jury do not and did not give the defendant company the right as against the rights of the plaintiff to disinter the body and make an autopsy after interment upon the body of C. E. Webber, her father, without the consent of the plaintiff. No consent on the part of the plaintiff has been shown by the evidence, and the undisputed evidence shows that her consent was not given, and therefore, the court rules, as a matter of law, that the rights of the plaintiff were invaded by such disinterment and autopsy after burial, and that it will be the duty of the jury to return a verdict finding the issues in favor of the plaintiff in this case, and give her such damages, if any, you may find that she has suffered, if any, as a proximate result of said disinterment and autopsy."

Thereupon the court charged as to the measure of damages.

The contention that this disinterment was "forbidden by law" is primarily predicated on paragraph 333 of the Illinois Criminal Code (Smith-Hurd Rev. St. 1933, c. 38, § 354, Cahill's Ill. Rev. Stat. c. 38, par. 333), which is: "¶333. Grave robbing. Whoever wilfully, and without authority, digs up, disinters, removes or conveys away from the place of sepulture or interment thereof, any human body or the remains thereof, or knowingly aids in such disinterment, removal or conveying away, shall be imprisoned in the penitentiary, not less than one nor more than ten years."

This section is directed against the criminal offense of grave robbing or otherwise "wilfully, and without authority," disinterring a body. Was this disinterment "wilful" in any relevant sense?

Appellant's investigation, made after receiving the telegram, revealed that the coroner's verdict, instead of merely saying, as in the telegram, that the death was accidental, stated that "deceased came to his death by accidentally falling into Taylor's slough as a result of some kind of fainting spell and was drowned." It was also then revealed that his widow had testified at the inquest that deceased had for some time next preceding his death been subject to fainting spells which caused him to fall. Surely these facts fully warranted appellant's requesting consent for an autopsy; and with the beneficiary's consent thereto there is an entire absence of wilfulness on the part of appellant in causing the autopsy to be made.

Was there "authority" for making this disinterment? Paragraph 333 of the statute does not indicate the nature of the prescribed "authority." It seems to be recognized in Illinois (Mensinger v. O'Hara, 189 Ill. App. 48; Palenzke v. Bruning, 98 Ill. App. 644; People v. Harvey, 286 Ill. 593, 122·N. E. 138), as well as in other states [In re Billman's Will, 143 Misc. 765, 257 N. Y. S. 491; O'Donnell v. Slack, 123 Cal. 285, 55 P. 906, 43 L. R. A. 388; Pettigrew v. Pettigrew, 207 Pa. 313, 56 A. 878, 64 L. R. A. 179, 99 Am. St. Rep. 195; Painter v. United States Fid. & Guar. Co., 123 Md. 301, 91 A. 158; Johnson v. Weed (Tex. Civ. App.) 52 S.W.(2d) 917], that one may make testamentary disposition of his own body. Contra, see Enos v. Snyder, 131 Cal. 68, 63 P. 170, 53 L. R. A. 221, 82 Am. St. Rep. 330. If he may do this by will, we see no lawful objection to his doing it by contract. Deceased, by the terms of the contracts, agreed with the insurer that it might make an autopsy upon his body. That such an agreement is consonant with public policy is abundantly manifested by the fact that such a stipulation is required by the statute to be incorporated in accident policies issued in Illinois. Doubtless the request for the autopsy should be seasonably made, but under the court's charge no question of seasonableness here arises, if, indeed, under any

phase of the record such an issue is indicated.

But here there was the specific consent and authorization by the widow and beneficiary under the policies, given after the burial, to make the autopsy. This consent to the autopsy necessarily implied consent to the disinterment, without which the agreed autopsy could not have been made. But apart from the written consent the widow's conduct plainly indicated her willingness and consent that the disinterment and autopsy be made.

The trend of the authorities is that, apart from testamentary disposition or of special circumstances which might dictate otherwise, a surviving husband or wife has full authority over the disposition of the deceased spouse as against the next of kin of the deceased. Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Johnson v. Bankers' Mutual Casualty Co., 129 Minn. 18, 151 N. W. 413, 414, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154; Barbour v. Ætna Life Ins. Co., 224 Ill. App. 312, 322; People v. Harvey, 286 Ill. 593, 601, 122 N. E. 138; Mensinger v. O'Hara, 189 Ill. App. 48.

In the Johnson Case the insurer made demand on the widow for an autopsy on the body of her husband, and the court there stated the rule: "The demand was made upon the proper person. The widow of deceased was the sole beneficiary under the policy and she had control of the body of deceased. Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Lindh v. Great Northern Ry. Co., 99 Minn. 408, 109 N. W. 823, 7 L. R. A. (N. S.) 1018. She alone had the right to say whether or not an autopsy should be held. It was proper that the demand be addressed to her."

This same quotation was employed with approval in Clay v. Ætna Life Co., 53 F. (2d) 689 (D. C. Minn.).

Appellee places much reliance on the cases of Cantrall v. Great American Casualty Co., 256 Ill. App. 47, and Schachner v. Employers' Liability Assurance Corp., 268 Ill. App. 503, contending that they indicate the law of Illinois to be that disinterment cannot be made without consent of the other relatives of deceased as well as of the surviving spouse. There was no such question in those cases. In each of them the insurer had made demand on the widow and beneficiary under such policies for permission to make autopsy on the remains of the deceased husband, and in each case the widow refused to give such consent. The insurers contended that thereby there was a breach of the terms of the policies and there should be no recovery thereunder. The widow maintained that demand for the autopsy was not seasonably made, and the timeliness of the demand became the ultimate issue. There was no such issue here, where the widow's consent to the disinterment and autopsy had been actually given; and no question of timeliness could therefore arise as to appellee.

In Mensinger v. O'Hara, supra, it was said, referring to the right of a surviving spouse to have possession and control of the body of the deceased: "This right is an exclusive right to the custody and possession of the remains, and in the absence of any testamentary disposition, belongs to the surviving husband or wife, if any, or if there be none, then to the next of kin."

While we are in entire accord with statutes and decisions designed to protect dead bodies, buried or unburied, against unreasonable mutilation or disturbance, we are satisfied, under this record, that, as between this widow and beneficiary on the one hand and appellee on the other, the authority to grant effective consent to the disinterment and autopsy was wholly with the widow and beneficiary under the policies, and to no extent with appellee. It follows that appellee's consent or want of consent to the disinterment was of no materiality here, and the disinterment without appellee's consent gave her no right of action.

Judgment reversed.