Bergait, J.
After extensive medical tests and procedures in a city hospital, the plaintiff’s wife died. The hospital medical staff was unable to give any definite cause of her death or to make a specific diagnosis. The problem in the case involves the authority of the medical examiner to determine in the public interest that there should be an autopsy.
She was admitted to the Coney Island Hospital, operated by the City of New York, on February 12, 1954 with acute abdominal pain. X-ray studies revealed the presence of free air under the diaphragm and it was felt that some organ had been perforated. She died February 21, 1954. A physician at the hospital asked plaintiff to consent to the performance of an autopsy. This consent was refused.
■ The case was “ signed out ” by the hospital as “ peritonitis due to perforation of viscus ”. The record shows that “ peritonitis ” and “ perforated viscus ” are both general terms and conveyed no definite medical information of the actual cause of death. The official records show further that this conclusion was “not acceptable to Board of Health” and that, “Since the cause of death was obscure ”, the medical examiner, to whose office the case was reported, decided to perform an autopsy.
The complaint in this action against the city alleges that the hospital through its employees performed the autopsy without the consent of the plaintiff and plaintiff in this court argues that the hospital doctors, to whom permission to perform an autopsy was refused, ‘1 conducted the autopsy anyway under the pretext that it was performed by the medical examiner upon the ground that the Board of Health would not accept the hospital death certificate ”.
*25 But there is no proof in the record that any physician employed by the hospital performed the autopsy or that the hospital or its agents made the decision to perform it. The proof is entirely uncontradicted, and a part of the plaintiff’s own case, that the decision to perform the autopsy was made by the medical examiner and it was performed by him.
Thus the legal issue as it reaches this court, the Appellate Division having reduced a plaintiff’s verdict for $12,500 to $3,500, is whether the medical examiner acted within the frame of his statutory authority in deciding to make, and in making, an autopsy. If his action was not within his legal power, the city would be liable to plaintiff for damages (Brown v. Broome County, 8 N Y 2d 330).
"When the Board of Health refused to accept the death certificate proffered by the hospital, Dr. Harold Rosenhaus, Acting Assistant Medical Examiner assigned to the Brooklyn office, came to the hospital in response to a call ‘ ‘ from a clerk in the Medical Examiner’s office ” concerning the death. There, from a view of the body, from an examination of the records of the case, and from a conversation with the “ resident on service ”, a Dr. Curi, he attempted to decide the cause of death.
Dr. Rosenhaus testified that Dr. Curi ‘ ‘ was unable to give me the cause of death ’ ’. The examiner further testified not only that the hospital physicians ‘ ‘ had no definitive diagnosis ’ ’ but that he himself ‘1 was unable to determine any exact cause of death”. He added: “I correlated the findings, but I was unable to make a definitive diagnosis.” In these circumstances, he decided to perform an autopsy.
The authority of the medical examiner to perform an autopsy in the City of New York is regulated by two statutory provisions (New York City Charter, § 878, and Administrative Code of City of New York, § 878-3.0, as it read in 1954). These provisions are construed together (Trammell v. City of New York, 193 Misc. 356, affd. 276 App. Div. 781) and thus read they authorize the performance of an autopsy “by a medical examiner ” on the body of a person dying in any “ unusual ” manner.
The autopsy itself developed findings which on several counts sustained the decision to make it; but the question must be *26 determined not by this, but by the situation confronting the medical examiner before he made his decision to perform the autopsy.
The hospital record in evidence shows a wide range of tests made and procedures followed in the course of treatment. The inability of physicians to diagnose the nature of her illness or to determine the cause of her death after following procedures customary in a modern hospital was an “ unusual ” termination of life.
The medical examiner was acting within the frame of his power when, having a report of death not acceptable to the Health Department, and finding on investigation no satisfactory explanation for death in the hospital records, i.e., “no definitive diagnosis ”, he determined that an autopsy was indicated.
Such a determination, and an autopsy in such circumstances, is a protection to public health and an additional safeguard in hospital care. If a hospital leaves uncertain or indifferently explained how a patient entrusted to its care dies, it is manifestly the duty of the medical examiner in the public interest to find out if he can.
Decisions such as Darcy v. Presbyterian Hosp. (202 N. Y. 259) where there was “nothing in the allegations of the complaint ” to indicate the patient died in an “ unusual manner ” (p. 265) or Brown v. Broome County (supra) where there was no reasonable ground to suspect a crime, which was the issue as to the coroner’s authority, have no true relevancy to the case now before us. The city is not liable for official decisions of the medical examiner within the frame of his statutory authority (Matter of Mitchell v. Helpern, 14 N Y 2d 817).
The judgment should be reversed and judgment directed for defendant, without costs.
Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke, Scileppi and Keating concur.
Judgment reversed, without costs, and complaint dismissed.