John M. Keane, S.
Over the centuries, and particularly in the current one, man has pushed the frontier of knowledge to limits that have oftentimes exceeded the dreams of many. Yet, even with increased knowledge, there comes to each man a time when that spark called life flickers, goes out forever and leaves only a cadaver. Upon those surviving is thrust the duty of consigning the mortal remains to the earth, to the sea or to flames. In New York, statutory law mandates that “ every body of a deceased person, within this state, shall be * * * buried or incinerated within a reasonable time after death” (Public Health Law, § 4200).
When Stafford L. Earner died July 15,1964, no problem arose concerning his funeral and sepulture. Two different people sought to make the funeral arrangements, his wife and his mother. Now that he has been lain to rest, Avho must pay for the ceremonies? That is the controversy in this judicial settlement of accounts.
The petition for letters of administration made by Vola N. Earner, decedent’s widow, contained a request that the bond be dispensed Avith or reduced. The court requested that a consent be obtained from the funeral director as a person with a preferred claim. The consent submitted by the funeral director indicated that decedent’s mother had made all the arrangements for the funeral services and contracted for their payment. The consent further stated that the funeral director would not look to the Avidow or to the decedent’s estate for payment of the bill. Letters of administration Avere issued to Vola N. Earner, the decedent’s widow, on September 30, 1964.
Subsequently, the administratrix initiated this proceeding for the judicial settlement of her accounts. The assets of decedent *519 amounted to $1,617.93, A claim of $976.60 by Velma 0. Drake, decedent’s mother, for reimbursement for payment of funeral expenses had been rejected by the administratrix. Upon the return date, testimony was heard concerning this claim.
Stafford L, Earner had been living apart from his wife, Vola NT. Earner, for three years before his death. There was no judicial separation. When he expired, the hospital advised his widow to effect the release of the body to a funeral director. The widow called an aunt of the decedent to inquire whether Coleman & Daniels Funeral Home, Inc. would be agreeable to the mother of the decedent. Having been answered in the affirmative, the widow released the body to that funeral home.
When the widow arrived at the funeral home, the decedent’s mother, aunt and a lady friend were already there. The confrontation was very brief. Decedent’s widow was conducted to another office in the establishment. From that time on, decedent’s widow and his mother had no direct conversations with each other prior to the funeral and burial.
The funeral director acted as a courier between the people seated in different parts of his establishment. He testified that the widow agreed to pay for the funeral of the decedent provided that she had control of all the arrangements, He further testified that the mother agreed to pay everything if she had control of all the arrangements. Finally the widow indicated that if decedent’s mother paid all the expenses, the latter could make all of the arrangements including selection of the place of burial.
Decedent’s widow left the funeral home. The arrangements were made by the mother who signed an agreement for a funeral costing $1,231.60. Decedent’s widow visited the funeral home once before the funeral but did not attend any further services.
It is the contention of the decedent’s mother that the funeral expenses of $1,231.60 are a proper charge against the estate of the decedent. It is the position of the administratrix that as the widow she relinquished her right to make the arrangements for the funeral and burial in exchange for the payment for the services by decedent’s mother.
A predecessor of mine of happy memory, Mr. Surrogate Page, was faced with a similar situation in Matter of Rejebian (115 N. Y. S. 2d 839 [1952]), Therein he stated (p, 841):
The proposition that a decedent’s estate is the primarily liable source of payment of funeral expenses is so elementary that no citation of authority is needed In its support. Ordinarily, there is never any question about this where the estate is solvent or even though it may be insolvent, if there are sufficient assets *520 to pay the funeral expenses subject only to the order of preferences.
“ However, the position of the administrator in this case is that the objectant is not entitled to the relief sought herein because she paid the expenses voluntarily and that, in doing so, she was a ‘ meddler ’. ’ ’
There are occasions when the estate does not incur liability for funeral expenses. Is this one of them?
The mother has cited Matter of Tangerman (226 App. Div. 162 [1929]); Matter of Vosburg (167 Misc. 611 [1938]) and Watkins v. Brown (89 App. Div. 193 [1903]) to support her claim for reimbursement. Liability for the funeral expenses was imposed on the estate in those cases. To that extent, these decisions support the mother’s claim.
A closer examination of these three cases shows a significant variance from the facts in the matter before the court. Although a separation of husband and wife existed in each of the three cases, the arrangements were made without consultation with the surviving spouse. Some one has to arrange for burial. In each of the three cases, the courts found that the person making the arrangements was not a “meddler”. In addition, the expenses were found to be reasonable and therefore a proper charge against the estate.
The basis of the rejection of the claim by the administratrix would appear to be founded on a contract between herself as decedent’s widow and the decedent’s mother. Although not spelled out specifically, the widow asserts that she relinquished her right to make the funeral arrangements to decedent’s mother upon condition that decedent’s mother pay all the expenses. Does the widow here have a right that would be consideration for such an alleged contract?
The question of the prior right of a surviving spouse for the disposition of the mortal remains of the deceased partner probably arises more frequently in requests for disinterment or claims for damages for mutilation of the remains.
An early case, Larson v. Chase (47 Minn. 307 [1891]) is frequently cited in cases involving the prior right of the surviving spouse. That was a case for damages for mutilation of the remains. The court said (p. 309): “ * * * and, while there are few direct authorities upon the subject, yet we think the general tendency of the courts is to hold that, in the absence of any testamentary disposition, the right of the surviving wife (if living with her husband at the time of his death) is-paramount to that of the next of kin.”
*521 In Foley v. Phelps (1 App. Div. 551 [1898]) the court paraphrased with approval the above quotation. However, in Foley v. Phelps (supra) the parties had not been separated.
Darcy v. Presbyterian Hosp. (202 N. Y. 259 [1911]) involved a claim for damages by a mother for the mutilation of her son’s body. The rationale of Larson v. Chase (supra) was approved. Of course no husband and wife were involved.
In Stahl v. William Necher, Inc. (184 App. Div. 85 [1918]) the court again paraphrased with approval the quotation above from Larson v. Chase (supra). Here a claim was made by a widow for damages in receiving an alleged erroneous cremation certificate. No separation existed here.
Apparently the precise question regarding the rights of a surviving spouse when a separation existed at the date of death did not arise until Matter of Forrisi (170 Misc. 649 [1939]). This was a removal case. The decedent had been separated from his wife for over two years. His father had made the funeral arrangements. The son was buried in a plot owned by his father. The father sought to move the remains to another plot which he owned in the same cemetery. The widow opposed the application.
Larson v. Chase (supra) was cited as authority for the position that the surviving wife’s rights were paramount only if she were living with her husband at the time of his death. Therefore the court granted permission to the decedent’s father for removal of his son’s remains.
The rights of a separated wife were discussed briefly in Matter of Mushel (125 N. Y. S. 2d 130 [1953]). This was a removal case. The children petitioned to remove their father’s body to another grave. The widow, a second wife, opposed the application. The widow had been separated from the decedent for 11 years prior to death, did not visit him during his last illness and did not attend his funeral. The court stated (p. 131): “Under these circumstances I believe that the wishes of the children should be considered paramount to those of the widow.” The permission for removal was granted. No cases were cited by the court.
Later the same year a similar controversy arose in Feller v. Universal Funeral Chapel (124 N. Y. S. 2d 546 [1953]). Here the widow had lived apart from the decedent pursuant to a separation agreement for over three years prior to his death. The executors requested that the funeral director deliver the ashes to a certain cemetery. The widow and daughter opposed this request. Involved additionally was the claim that the decedent wished to be buried in that particular cemetery.
*522 In the decision the court states (p. 550); “In so far as the widow is concerned, the law is clear that a wife from whom the decedent was separated does not have the rights of a widow concerning his remains. ’ ’ Then there are cited Matter of Forrisi (supra); Matter of Mushel (supra) and Darcy v. Presbyterian Hosp. (supra) to support the statement.
In Larson v. Chase (supra) it was parenthetically stated that a surviving widow had rights in relation to her husband’s remains only if they Avere living together. In that case there was no separation. From that statement in 1891, the converse has been stated to be the law on the occasions mentioned, namely that a widow separated from her husband has no such rights. Despite age of Larson v. Ghase (supra) this court believes the matter should be re-examined in view of present day concepts.
The precise question relating to rights of a surviving spouse Avhen a separation exists has not been reviewed by the higher courts. Darcy v. Presbyterian Hosp. (supra) in the Court of Appeals, involved a mother and son. Efforts have been made to clarify other rights of a surviving spouse by the Temporary Commission on Estates in the enactment of section 50 of the Decedent Estate Law. (See Report No. 1.14B in Fourth Report [N. Y. Lcgis. Doc., 1965, No. 19, p. 88].)
Under both present law and that existing at the date of the death of Stafford L. Earner, a widow living apart from her husband was entitled to her share in an intestacy. She was entitled to benefits under section 200 of the Surrogate’s Court Act. Why does she not have some rights regarding the funeral and burial arrangements of her departed husband?
Absolutes are rare in the physical sciences. They are even rarer in the law. Therefore, this court believes no inflexible rule concerning rights of the surviving spouse can be formulated that avíII be attuned to all the nuances of situations arising when the couple have been living apart at the date of one partner’s death. This court believes that a surviving spouse who had been living apart does have some rights concerning the funeral and burial of her husband.
If she chooses not to exercise these rights, the estate of her husband must bear the reasonable costs of his funeral and burial. (See Matter of Tangerman, 226 App. Div. 162, supra, and Matter of Vosburg, 167 Misc. 611, supra.) If she does nothing at the time of the funeral, she should be precluded from prevailing later if a removal is requested. (See Matter of Forrisi, 170 Misc. 649, supra, and Matter of Mushel, 125 N. Y. S. 2d 130. supra.)
*523 Where there is no judicial separation, this court believes that a wife separated from her husband has some rights regarding the funeral services of her husband. These rights are not coterminous with the property rights granted to her under the relevant statutes. So here, where it would appear that the widow could be entitled to the entire small estate, that fact alone does not give her rights paramount to decedent’s mother.
Despite the separation, when it is considered that the parties had been apart for only three years, had continued to live in the same community and the wife had received support payments from her husband, this court concludes that the widow’s rights and the rights of his mother to control the funeral arrangements were equal. This court finds that the widow had certain rights under the separation that had existed here.
If the widow had made no effort to exercise the rights which this court believes she has, the estate of Stafford L. Earner would be liable for reasonable funeral expenses because his mother was not a meddler. What is reasonable under these circumstances?
The account as filed shows assets of $1,617.93. To this must be added $255 which was available from the Social Security Administration toward payment of funeral expenses. In total figures we have $1,872.93. With some reluctance this court determines $850 would be a reasonable charge for the funeral services.
Decedent’s mother made the arrangements. Her testimony about unfamiliarity with liability for payment was not convincing. We have here a situation of a mother most anxious to control the funeral arrangements. She was present at the funeral home with her sister and a lady friend of her son. The funeral director testified that the mother agreed to pay for the funeral and that the lady friend said she would help her. In fact, the decedent was buried in a plot owned by the family of the lady friend.
Decedent’s mother was the beneficiary of life insurance of the decedent of about $1,500. On that afternoon she was determined to control the funeral arrangements. It was only later that thoughts turned to reimbursement from the small estate left by her son. Having made her choice and had the benefits of her bargain, the mother cannot now impose on another a liability she voluntarily shouldered.
If the widow had done nothing, the estate would be chargeable with $850 of decedent’s funeral expenses. Being the sole beneficiary of his estate, the widow could have spent as much or as little as she desired had she made the arrangements. Here she *524 relinquished her rights to decedent’s mother who made the arrangements. This court sets a figure of $425 for the relinquishment of such rights by the widow. This is one-half the reasonable amount chargeable to the estate. This amount would be payable by decedent’s mother.
The funeral bill was $1,231.60. The Social Security Administration paid $255 directly to the funeral director. The balance of $976.60 was paid by decedent’s mother prior to this proceeding upon stipulation that such payment would in no way prejudice her claim for reimbursement. This decision has been made on that basis.
The estate is, therefore, chargeable with $425 toward the funeral expenses of the decedent. Credit shall be given to the estate for $255 already paid to the funeral director by the Social Security Administration, leaving a balance of $170 payable by the estate.
Therefore, the claim of Velma C. Drake, decedent’s mother, for reimbursement of funeral expenses is allowed only to the extent of $170. Having had control over the funeral and burial of her son, Stafford L. Earner, she must bear the burden of one-half the reasonable charge to compensate the widow for the relinquishment of her rights and such additional amount above the reasonable charge as she contracted to pay for the services.