## JACOB LITTERAL, Respondent, v. PAULINE LITTERAL et al., Appellants.

### Kansas City Court of Appeals, June 8, 1908.

1. **BURIAL RIGHTS: Husband and Wife: Evidence: Assault on Wife.** In an action by the father of a deceased husband to enjoin the wife from exhuming and reburying the husband, where it appears that the marital relations were unimpaired at the time of the death, evidence tending to assail the conduct of the wife cannot abate or affect her rights of widowhood.

2. ———: **Common Law: Ecclesiastical Courts.** At common law neither the widow nor next of kin could determine the place of burial as the matter was exclusively of ecclesiastical jurisdiction to be settled by the ordinary.

3. ———: **American Law: Equity Courts: Rights of the Dead.** In America burial rights practically belong to the cognizance of courts of equity and the only rights of the dead are a decent sepulture and the right to rest undisturbed thereafter.

4. ———: **Duty of Living: Consequent Rights: Propriety.** The duty of preparing the body and providing for the funeral rests on the surviving consort or next of kin and then the duty rests on all, including the courts not to disturb the body except in cases of necessity or some cogent reason appealing strongly to human nature or propriety; but this duty carriers with it no rights of ownership over the corpse but merely such rights as are necessary to the performance of the duty.

Litteral v. Litteral.

5. ——: Husband and Wife: Father and Son: Injunction. A son was brought home sick and died at his father's home, who buried him. The wife, absent, pursuing her profession, knew nothing of the dangerous condition or of the death, until sometime after the burial. *Held*, while if present the wife could have controlled the place of burial, yet, when the right was satisfied fully by the father on whom the duty devolved, no good reason is perceived why she should be permitted to remove the body.

Appeal from Jasper Circuit Court.—*Hon. Hugh .Dabbs*, Judge.

AFFIRMED.

*R. A. Mooncyham* for appellant.

*McReynolds & Hallibuton* for respondent.

(1) A bill in equity to enjoin the interfering with a lot in a cemetery ground may be brought in the name of the party owning the lot or relatives of deceased buried thereon. Boyce v. Kalbaugh, 47 Md. 334, 28 Am. Rep. 464; Davidson v. Reed, 111 Ill. 167, 53 Am. Rep. 613; 6 Cyc. 72, sec. 8, par. 182, note 70; Pierce v. Cemetery, 10 R. I. 227, 14 Am. Rep. 667; Keys v. Koupel, 75 Am. St. 427; Church v. Church, 2 Brewst. 372; Price v. Church, 4 Ohio 515; Mitchell v. Thorn, 134 N. Y. 536, 30 Am. St. 699, 32 N. E. 10. (2) Charles Litteral having died in his father's home, it was the duty of Jacob Litteral to give the body a decent burial, especially the wife being absent. Pierce v. Cemetery, 10 R. I. 227, 14 Am. Rep. 667; Wynkoop v. Wynkoop, 42 Penn. St. 293, 82 Am. Dec. 506, and note 4, p. 511, note 6, p. 513. (3) The body of Charles Litteral having been interred by his father, Jacob Litteral, on a lot purchased by him in Mount Hope Cemetery; the body encased in a fine casket and properly and decently dressed, and the cemetery and lot of the best; all done in the absence of the widow Pauline Litteral, she is not entitled to enter on the lot and attempt to remove, or remove

the body and casket or either, and the court will enjoin her from so doing. Whatever right the wife had to bury her husband terminated with burial whether with or without her consent. Guthrie v. Weaver, 1 Mo. App. 136; Wynkoop v. Wynkoop, 42 Penn. 293, 82 Am. Dec. 506; In re widening Beekman Street, 4 Bradf. 503; Griffith v. Railroad, 55 Am. Rep. 5.   (4)   While it is ordinarily the right of the wife to bury the deceased husband, yet, when a body has once been buried, no one has the right to remove it without the consent of the owner of the grave, or leave of the proper ecclesiastical, municipal or judicial authorities.   Pierce v. Cemetery, 10 R. I. 227, 14 Am. Rep. 667; Wynkoop v. Wynkoop, 42 Penn. St. 293, 82 Am. Dec. 506; Regina v. Sharpe, Dearsley & Bell, 160-163; Weld v. Walker, 130 Mass. 412, 39 Am. Rep. 466; Gardner v. Cemetery, 20 R. I. 646, 40 Atl. 871, 78 Am. St. 897; Anderson v. Acheson (Iowa), 110 N. W. 335, 9 L. R. A. (N. S.) 217; Guthrie v. Weaver, 1 Mo. App. 141.   (5) - The taking up and removing the body of Charles Litteral by defendant, under the circumstances shown in this case would have been felony (R. S. 1899, sec. 2229), or a misdemeanor (R. S. 1899, sec. 2231), and a misdemeanor under the common law. Keyes v. Konkel, 75 Am. St. 426; Wynkoop v. Wynkoop, 82 Am. Dec. 515, note 8.

JOHNSON, J.—This is a suit in equity in which plaintiff prays that defendants be enjoined from entering upon Lot 131, Block 4, in Mount Hope cemetery in Jasper county and "from taking up or attempting to take up and remove therefrom the body of Charles Litteral or the casket and box in which said body is encased."   A temporary injunction was issued, and served on defendants and on final hearing, it was made perpetual.   Defendants appealed.

Plaintiff lives at Carterville in Jasper county and

was the father of Charles Litteral. In 1905, the young man married defendant, Pauline, but for reasons not necessary to state, kept the marriage secret for several months. When his parents were informed of it, they were deeply displeased and manifested their feelings by abstaining from friendly intercourse with their daughter-in-law who was an actress and followed that vocation after her marriage. In the autumn of 1906, the health of Charles began to fail and it was discovered that he was suffering from tuberculosis of the lungs and bowels. He spent the winter in southern California, Arizona and Texas, part of the time accompanied by his wife. In February, 1907, they were together in El Paso and he consented to her joining a theatrical company which was en route to Mexico to fill engagements in that country. He went to San Antonio, where his health failed rapidly and his condition became so serious that he wrote his father to come to him. The father answered the summons and arriving at San Antonio, learned from physicians that his son's condition was hopeless. He defrayed all of the expenses, took his son to a sanitarium where he remained until the physicians thought him able to stand the journey to Missouri and then brought him back home to die. The young man lived about one month and then died in his father's house. He was buried in a lot owned by the father in Mount Hope cemetery near Joplin and the funeral and interment were conducted at the expense of the father and in a manner befitting the station of the deceased.

During the period covered by these events, defendant Pauline was traveling with her company in Mexico and did not learn of the critical illness and subsequent death of her husband until a week or more after his burial. She felt that his parents had withheld this knowledge from her purposely and hastened to the scene of his death. Arriving there, she notified plaintiff of her purpose to exhume the body and to remove it to

Rock Island, Ill., for burial and employed undertakers to prepare it for shipment.    This suit followed.

We approve the conduct of the learned trial judge in refusing to permit plaintiff to introduce evidence for the purpose of assailing the character of the young widow.  We think all of the facts show beyond question that the marital relations between her and her husband remained unimpaired and normal to the hour of his death and that their frequent and, at times, prolonged separations were due to their financial necessities and not to the desire of either to live apart.  This being true, it would have been contrary to all sense of decency and propriety for the courts to have suffered the character of the young woman to be attacked in a suit of this nature.  As long as her hubsand was satisfied with her conduct, her marital rights continued and, as they remained unimpaired to the time of his death, her rights of widowhood could not be abated or affected by conduct which might have given her husband cause for ending the relationship.

It is not shown that the widow has any other reason for the assertion of a right to remove the body than a desire to gratify her own choice of its final resting place.  Therefore, the vital question for us to decide is this:  Has a widow who has been denied by stress of circumstances the sad privilege of burying her dead the absolute legal right, afterward, to disinter the body from the place where it was interred in a proper manner by the next of kin, for the purpose of reburial in a place more to her liking?

At common law, neither the widow nor the next of kin had the right to determine where the body should be buried.  Indeed, neither the law nor equity courts had any jurisdiction over the burial of the dead. That was a matter of ecclesiastical jurisdiction, and all disputes relating to it were settled by the ordinary.  By the ecclesiastical law, every person had the right to be

buried in the parish churchyard "and a claim of right by custom to bury as near relatives as possible was held bad. The whole was under the direction of the ordinary and was of ecclesiastical cognizance and, once buried, the body could not be removed without license from the ordinary." [Pierce v. Proprietors of Swan Point Cemetery, 14 Am. Rep. 667.]

In this country, where we have no ecclesiastical courts, burial rights and duties belong peculiarly to the cognizance of the courts of equity. [Weld v. Walker, 130 Mass. 422.] The only rights (if we may call them rights) left to the dead are, first, that of decent sepulture; to have the body decently covered and consigned to earth from which it sprung, and then the right to be suffered to rest undisturbed until the body shall have been resolved into its original elements. These rights impose a corresponding duty on the living, primarily resting on the surviving consort, or next of kin, to provide for the preparation of the body, the funeral and burial, and then the duty rests on all, including the courts, not to disturb the body except in cases of necessity or for some cogent reason which appeals strongly to human nature or to one's sense of propriety. The imposition of the duty to bury the dead carries with it the conferring on the person charged therewith of such rights as may be necessary to a proper performance. In the sense in which the word "property" ordinarily is used, one whose duty it becomes to bury a deceased person has no rights of ownership over the corpse. But in the broader meaning of the term, he has what has been called a quasi property right which entitles him to the possession and control of the body for the single purpose of decent burial. If the deceased person leave a widow, such right belongs to her in preference to his kinsmen, provided she be present to perform the duty for which the right is a mere handmaiden. If from absence or other cause she be disabled from performance, the duty

then should be discharged by the close kindred, or by the person in whose house the man died, and at the charge of the estate of the deceased person. These rules and principles are well supported by authority. [Boyce v. Kalbaugh, 47 Md. 334; Pierce v. Swan Point Cemetery, supra; Wynkoop v. Wynkoop, 82 Am. Dec. 506, and notes; Guthrie v. Weaver, 1 Mo. App. 136; In re widening Beekman Street, 4 Bradf. 503; Griffith v. Railroad, 55 Am. Rep. 1; Weld v. Walker, supra; Gardner v. Swan Point Cemetery, 20 R. I. 646; Anderson v. Acheson, 110 N. W. 335; Larson v. Chase, 50 N. W. 238; Koeber v. Patky, 68 L. R. A. 956; Foley v. Phelps, 37 N. Y. Supp. 471; Hackett v. Hackett, 26 Atl. 42.] Applying them to the facts before us, we must hold that the widow, had she been present, would have had the right, enforcible in a court of equity to control the burial of her husband and to select the place of his interment, regardless of the wishes of his parents at whose house he died. But she was away, in a foreign country, was ignorant of his death and, therefore, was unable to assert her right, or what was more important, to perform her duty. It is immaterial whether or not her disability was caused by the harsh neglect of her father-in-law. Whatever the cause, she was not there and the right of the dead man to orderly and decent sepulture would not brook delay. That right was satisfied fully by the father on whom the duty devolved and we perceive no good reason for permitting defendants to remove the body from its resting place. While we sympathize with her, believing she has been treated badly, we do not think her mere desire to change the place of interment which evidently is prompted largely by her bitterness against those who misused her, a sufficient reason for invading the sanctity of the grave. Courts of equity following precedents established by the ecclesiastical courts always have been reluctant to accede to such requests and, as we observed before, have

not done so except in cases of necessity or where the reason advanced in support of the claim of right to remove is of a compelling nature.

The judgment is affirmed. All concur.