### CURLIN v. CURLIN et al. (No. 1757.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 23, 1921.)

**1. Dead bodies ⬤〰1—Surviving wife has right to body of deceased husband.**

The wife upon the death of the husband has the primary and paramount right to the possession of his body and the control of the burial or other legal disposition thereof.

**2. Dead bodies ⬤〰5—Wife consenting to burial of husband could not remove body except for good cause.**

Where the father, mother, and brother of deceased selected a lot belonging to the father for burial, the surviving wife of deceased by requesting that space be left by the side of husband's grave where she could be buried later upon her death selected such lot as the place of burial, precluding her from removing body after burial in such lot without the consent of the father and mother and brother without good reason for so doing.

**3. Dead bodies ⬤〰5 — Presumption against wife's right to remove body of husband after burial.**

Surviving wife's right to remove husband's body after burial is subject to the right of the court to require reasonable cause to be shown therefor; the presumption being against a change.

**4 Dead bodies ⬤〰5 — Wrongful removal of buried body will be enjoined.**

Deceased husband having been buried on the lot of his father, mother, and brother with the consent of the wife under an agreement that it should be the final resting place of the body, the father and mother could invoke the powers of a court of equity to restrain the widow from removing the body to another place.

**5. Dead bodies ⬤〰4—Wishes of deceased considered in determining burial place.**

The court in determining controversies as to the burial place of dead bodies will give great weight to the expressed wish of the deceased.

Appeal from District Court, Montague County; C. R. Pearman, Judge.

Suit by J. H. Curlin and others against Mrs. Winnie Curlin and another. Judgment for plaintiffs, and defendant Curlin appeals. Affirmed.

Ocie Speer, of Ft. Worth, and Donald & Donald, of Bowie, for appellant.

W. T. Russell, of Montague, and J. E. Hall, of Wichita Falls, for appellees.

HUFF, C. J. J. H. Curlin, his wife, M. E. Curlin, and Ernest Curlin, father, mother, and brother respectively of Will Curlin, deceased, brought this suit to restrain Mrs. Winnie Curlin, the surviving widow of Will Curlin, and an undertaker, from disinterring and removing the body of deceased from one lot to another, in the Nacona cemetery, in Montague county. Upon final trial before the court judgment was entered in favor of the plaintiffs, perpetually restraining and enjoining the defendant from removing or attempting to remove the body. The findings of the trial court and conclusions of law will sufficiently state the facts, which are as follows:

"(1) W. L. Curlin died on March 4, 1919, and was buried on a lot in the city cemetery of the city of Nacona; that after his burial on or about the ——— day of December, 1919, the defendants undertook to disinter the body and remove the same to another part of the cemetery, and to prevent the same sued out. and there was granted a temporary writ of injunction restraining them from so doing; that on the ——— day of January, 1920, at the January term of this court, the case was heard upon its merits, and upon the plea of the defendant to dissolve the injunction the court heard the same without the intervention of the jury, and by an order perpetuated the injunction upon the following facts as found by the court:

"(2) The plaintiffs J. H. Curlin and M. E. Curlin are husband and wife and the father and mother of W. L. Curlin, deceased, and the plaintiff Ernest Curlin was his brother.

"(3) The defendant was the wife of W. L. Curlin, deceased, in his lifetime, and is now his surviving widow and single; that the defendant J. A. Burgess is an undertaker, and was employed by the defendant Winnie Curlin to exhume, or disinter the body and remove the same.

'(4) On March 4, 1919, W. L. Curlin died at his home in Nacona, Tex., at which time he was living with the defendant. Winnie Curlin was sick and unable to attend the funeral of her said deceased husband, but directed his burial in the following manner: She had a coffin and shroud selected under her direction, and requested of J. H. Curlin and his wife that her deceased husband, W. L. Curlin, be buried on a lot that had been previously selected by him about March, 1918, as a burial lot for the Curlin family—that is, for himself and his said father, mother, and brother—and. expressed himself that he had as soon be buried there as any place in the cemetery, and upon which a grandchild of J. H. Curlin and wife had been buried; that she requested that space be reserved by the side of the grave of her deceased husband, where she could be buried' later in the event of her death, which request was complied with by the said J. H. Curlin and wife, plaintiffs, and others, who assisted in the burial of the deceased.

"(5) That after the burial of the said W. L. Curlin, deceased, the said J. H. Curlin placed a cement curb around the said burial lot and otherwise the grave of the deceased had been taken care of and cared for by plaintiffs, and that in the meantime arrangements were made by both the plaintiffs and the defendant Winnie Curlin each to buy a monument for the grave, but it was agreed among themselves that the plaintiff J. H. Curlin would countermand the order he had given and permit the monument.

⬤〰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ordered by the defendant Winnie Curlin to be erected; further, it was mutually agreed and so understood by both parties that each should have access to the grave and to keep and care for the same without hindrance; that also the plaintiff J. H. Curlin offered to pay for the casket and share other expenses, which the defendant, Winnie Curlin, paid.

"(6) That the lot on which he was buried was selected by the deceased himself and purchased from the city of Nacona as a burial lot of the Curlin family, and which lot was located in a very desirable part of the cemetery, where it could have attention by the sexton as well as by both plaintiffs and defendant Winnie Curlin.

"(7) That on or about ―――― day of December, A. D. 1919, defendant Winnie Curlin employed the defendant J. A. Burgess to disinter and remove the body to another part of the cemetery, which act was caused by an estrangement between the defendant Winnie Curlin and the plaintiff, Mrs. M. E. Curlin, but to the location there was no advantage to be derived by the removal of the body to another part of the cemetery, one location being equally as good as another part of the cemetery; that the defendant Winnie Curlin did not communicate to the plaintiffs her intention of removing the body, and they did not know the same until the grave was being dug into by the defendant J. A. Burgess.

"(8) I find that the deceased, prior to his death, had expressed a desire to be buried on the west side of the cemetery, and at the time of the attempted removal the defendant Winnie Curlin, had procured a half lot in the northwest part of the cemetery upon which she intended to place the body; and also intended to place the monument which she had purchased at his grave.

"(9) That the defendants have procured from the proper authorities all necessary permits to exhume and remove the body of the deceased to the lot selected by Winnie Curlin on the west part of the cemetery.

"(10) I find that the respective parties to this suit love and cherish the memory of the deceased as become father, mother, brother, and wife, respectively. Upon these findings the court reached the following

## "Conclusions of Law.

"(1) Therefore the court concludes that the burial of the deceased husband of the defendant Winnie Curlin as aforesaid was buried under her directions, and as requested by her in all matters pertaining to his funeral and his burial.

"(2) And further the plaintiffs performed such duty at her request as the next kin, as it was their duty to do under the law, and thus the funeral, burial, and disposition of the body was in all respects complied with under the requirements of the law.

"(3) That the body having been thus buried, and no good reason being shown therefor, in the opinion of the court, it should not be permitted to be removed, and the court therefore in his judgment perpetuated the injunction."

[1] The evidence in this case would have authorized the court to find that appellant did not consent to the burial of the body of her husband on the appellee's lot, but, on the contrary, instructed the father to procure a lot in the west part of the cemetery, and inter the body at that place, and that this request was made by appellants to comply with the express desire of her husband during his last illness. The trial court has seen proper, however, to find to the contrary and to accept the testimony of the appellees. The findings of the trial court are not challenged by exceptions or assignments, and these findings have support in the testimony. The only question presented is one of law upon the facts found. It is established by most of the courts in the United States that the wife, upon the death of the husband, has the primary and paramount right to the possession of his body and the control of the burial or other legal disposition thereof. This right is given her in preference to others or the next of kin to the deceased. This right is recognized in this state in the case of Foster v. Foster, 220 S. W. 515, and is the generally accepted rule by most of the courts passing on the question. O'Donnell v. Slack, 123 Cal. 285, 55 Pac. 906, 43 L. R. A. 388, Hackett v. Hackett, 18 R. I. 155, 26 Atl. 42, 19 L. R. A. 558, 49 Am. St. Rep. 762, and many other authorities, some of which are cited below announcing the general rule.

[2] According to the court's findings of fact, appellant, the wife, and the appellees, father, mother, and brother, selected a lot belonging to the father for the burial of the deceased, and the wife requested space be left by the side of his grave, where she could be buried later, upon her death. The space was left as requested. Under this finding she expressed her right of selection and the place of burial. The place so selected, as indicated by the finding, was for the final resting place of the body. Smith v. Shepherd, 64 N. J. Eq. 401, 54 Atl. 806.

[3] After so selecting the place the question remains whether she could exhume and remove the body to another lot subsequently purchased in the same cemetery, by the appellant, without the consent of the appellees, who were the owners of the lot upon which the body was buried. We think the right remains with the wife to remove the body, but this right is a qualified one. Neighbors v. Neighbors, 112 Ky. 161, 65 S. W. 607; McGann v. McGann, 28 R. I. 130, 66 Atl. 52; Pettigrew v. Pettigrew, 207 Pa. 313, 56 Atl. 878, 64 L. R. A. 179, 99 Am. St. Rep. 795; Larsen v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370. With regard to reinterment, the right in the wife still exists, reserving always the right of the court to require a reasonable cause to be shown for it. The presumption is against a change. The sentiment of humanity is not only against profanation, but disturbance. This disinterment of dead bodies

is discouraged by the courts, as we think the trend of decisions indicate, and is as well repugnant to the sentiment of humanity. Removal should not be permitted except under circumstances indicating a necessity or for compelling reasons therefor. Thompson v. Deeds, 93 Iowa, 228, 61 N. W. 842, 35 L. R. A. 56; Buchanan v. Buchanan, 28 Misc. Rep. 261, 59 N. Y. Supp. 810; Gardner v. Point, etc., 20 R. I. 646, 40 Atl. 871, 78 Am. St. Rep. 897; In re Donn (Sup.) 14 N. Y. Supp. 189; Smith v. Shepherd, 64 N. J. Eq. 401, 54 Atl. 806; Choppin v. Dauphin, 48 La. Ann. 1217, 20 South. 681, 33 L. R. A. 133, 55 Am. St. Rep. 313; Ritter v. Couch, 71 W. Va. 221, 76 S. E. 428, 42 L. R. A. (N. S.) 1216; note to Wormley v. Wormley, 3 L. R. A. (N. S.) 481.

[4] The husband having been buried on the lot of appellees, with the consent of the wife, under an agreement at the time indicating it was to be the final resting place of the body, the father and mother could invoke the powers of the court of equity to restrain the widow from removing the body to another place. Peters v. Peters, 43 N. J. Eq. 140, 10 Atl. 742; Pierce v. Swan Point, etc., 10 R. I. 227, 14 Am. Rep. 667; Wynkoop v. Wynkoop, 42 Pa. 293, 82 Am. Dec. 506, and note; Pulsifer v. Douglass, 94 Me. 556, 48 Atl. 118, 53 L. R. A. 238; Snyder v. Snyder, 60 How. Prac. (N. Y.) 371; Weld v. Walker, 130 Mass. 422, 39 Am. Rep. 465; Litteral v. Litteral, 131 Mo. App. 306, 111 S. W. 872.

[5] It is insisted in this case, as we understand appellants, that the court found the deceased in his lifetime expressed a desire to be buried in the west part of the cemetery; that this wish so expressed should control the judgment of the court. It is true courts, in determining controversies of this kind, give great weight to the expressed wish of the deceased. It will be seen, however, the court finds as a fact the deceased purchased the lot upon which he was buried for his father, as a family burying ground, and at the time of doing so expressed himself that he would as soon be buried there as any place in the cemetery. While the testimony of the wife upon the trial is to the effect that deceased, two or three days before his death, requested her to bury him on the west side, we are inclined to believe the court did not base his finding upon that testimony, as his wife was also sick with influenza and pneumonia at the same time, and the nurse who was with the deceased some four days before his death testified he was delirious during the time and only at times able to recognize the immediate members of his family. One or two other witnesses testified before his

last sickness, just when is not shown, the deceased, while in the cemetery, said he would wish to be buried in the west part of it. It is probable the court based his findings upon the latter testimony. If so, both expressions as to the one in question and the west side were apparently casual or rather a question in his mind which would be the most desirable. If appellant agreed to his burial upon the lot in question and desired space left for her burial by his side, as found by the court, she evidently at that time did not regard the statement of a preference as a sacred request, to be religiously fulfilled, or that his feelings were repugnant to burial on the lot in question. In agreeing to the burial the wife evidently did not believe at that time she was violating a request of her husband or violating a refined sentiment or duty to his memory.

"It is thus settled that there is no property right in a dead body; that upon the death of a married person the surviving husband or wife is entitled to the custody of the dead body, and charged with the duty of furnishing proper burial; that when that duty has been discharged, and the remains of the dead have been buried, the right of custody in the surviving husband or wife at once ceases, and it may properly be said that the dead body thereafter is in the custody of the law, because the disturbance of its resting place and its removal is subject to the control and direction of a court of equity in any case properly before it." Smith v. Shepherd, supra.

It is true in this case that the wife's right of burial is better than that of the father and mother or brother, but that is not the only question in this case. She selected as the burial place the property of the appellees, and under the authorities as we understand them she would have no right to remove the body therefrom without their consent unless she can show some cogent reason therefor. We are inclined to think under all the facts of this case that the court had sufficient evidence to perpetually enjoin the wife from removing the body from the lot. In a number of cases cited above the right is expressly recognized in the next of kin who own the lot, to prevent such removal, or the disturbance of the body after it has been laid to rest in a permanent burial.

The trial court, by his judgment, has sufficiently protected the rights of appellant in visiting the grave and caring for it and erecting a monument thereat, and whatever feeling may exist between the parties is not sufficient alone to require a different decree.

Affirmed.