In re EXHUMATION OF the
BODY OF D.M.

**MISSOURI DIVISION OF FAMILY SERVICES, DEPARTMENT OF SOCIAL SERVICES, Appellant,**

v.

**Deborah MOSBY, Respondent.**

No. 17108.

Missouri Court of Appeals,
Southern District,
Division Two.

May 6, 1991.

Daniel J. Czamanske, Jr., Dept. of Social Services, Jefferson City, for appellant.

James E. McGhee, Dexter, for respondent.

PER CURIAM.

This is an appeal of an order dismissing a petition filed on behalf of the Missouri Department of Social Services (the department). The petition sought an order to exhume and autopsy the body of D.M. Respondent (the mother of the deceased) filed a motion to dismiss the petition alleging that the department lacked legal standing to bring the action for exhumation and autopsy. The trial court sustained respondent's motion. This court affirms.

*Litteral v. Litteral*, 131 Mo.App. 306, 111 S.W. 872, 873 (1908), declared that the dead were left with the rights "(if we may call them rights)" of "decent sepulture" and "the right to be suffered to rest undis-

turbed until the body shall have been resolved into its original elements." It added that "the duty rests on all, including the courts, not to disturb the body, except in cases of necessity or for some cogent reason which appeals strongly to human nature or to one's sense of propriety." This declaration amounts to public policy in that public policy of a state is "found in the 'Constitution, statutes, or judicial decisions of the state or nation.'" *Schulte v. Missionaries of La Salette Corp. of Mo.*, 352 S.W.2d 636, 638 (Mo.1961), *quoting In re Rahn's Estate*, 316 Mo. 492, 291 S.W. 120, 123 (1926), *cert. denied*, 274 U.S. 745 (1927). "[B]ut statutes are the very highest evidence of public policy and binding on the courts." *Brawner v. Brawner*, 327 S.W.2d 808, 812 (Mo. banc 1959). The department contends that §§ 210.145 and .150 [1] provide authority for it to secure the exhumation and autopsy of the body—that those statutes afford it legal standing for the relief it sought in the trial court. If §§ 210.145 and .150 may be interpreted in the manner urged by the department, those statutes would amount to a declaration of public policy that the need for the department to cause an autopsy to be performed, under the facts of this case, constitutes cogent reasons for disinterment.

Sections 210.145 and .150 require the Division of Family Services to provide a statewide toll free number for the public to use to report suspected incidents of child abuse and to maintain a "central registry" in which information provided by those reports is kept. The department contends these requirements give it standing to seek an order for exhumation and autopsy because § 210.145 "has ... duly delegated the duty and power [to the department] to investigate reports of child abuse" and § 210.150 provides for various child care providers to have access to information in the central registry that is otherwise confidential. The department argues that these statutes require it to determine if the deceased child whose body it seeks to exhume was abused. From that argument the department extrapolates that it has the duty to determine whether "to list a person as responsible for [the child's] death on the Central Registry" and that "[w]ithout an autopsy, it would be impossible for the Department to come to a proper conclusion" whether there was child abuse and, if so, "whether to list a person as responsible for [the child's] death on the Central Registry."

The question of whether the department has the authority to seek exhumation cannot be addressed without considering whether the department has authority to cause an autopsy to be performed. That is the purpose for which exhumation is sought. If the department is without authority to cause an autopsy to be performed, it is without authority to seek an order for exhumation.

Section 194.115 addresses the question of when an autopsy may be performed. It addresses that question by declaring that a licensed physician commits a misdemeanor if he or she performs an autopsy without the authorization that the statute requires. The statute states, in pertinent part:

1. Except when directed by a public officer or agency authorized by law to order an autopsy or postmortem examination, it is unlawful for any licensed physician and surgeon to perform an autopsy or postmortem examination upon the remains of any person without the consent of one of the following:

.　　.　　.　　.　　.

There then appears a list of persons authorized to consent to an autopsy. The department is not included among those who may give consent to an autopsy.

Section 58.451.6 provides that a coroner may conduct an autopsy or cause an autopsy to be conducted "[i]f on view of the dead body and after personal inquiry into the cause and manner of death, the coroner determines that a further examination is necessary in the public interest." Medical examiners have the same authority in counties that do not have coroners. §§ 58.710 and .725, RSMo 1986. Consistent therewith, the legislature provided in § 58.451.3:

---

**1.** References to statutes are to RSMo Supp.1990    unless otherwise stated.

In any case of sudden, violent or suspicious death after which the body was buried without any investigation or autopsy, the coroner, upon being advised of such facts, may at his own discretion request that the prosecuting attorney apply for a court order requiring the body to be exhumed.[2]

Thus, coroners [3] and medical examiners [4] are public officers or agencies authorized by law to order autopsy or postmortem examinations.

There is no statute that declares that the department or any officer, agent or employee of the department is authorized to order an autopsy or postmortem examination. Nor does a reading of §§ 210.110 to 210.165, RSMo 1986 (together with the revisions thereof in RSMo Supp.1990), support the department's claim that it, by reason of duties prescribed by § 210.145, is authorized to order an autopsy or postmortem examination. The legislature, in chapter 210, devised procedures for the prompt initiation of investigations of complaints of child abuse and neglect. § 210.145.6. An investigation must commence "within twenty-four hours of receipt of the report." *Id.* The investigation is required to be completed within 30 days thereafter at which time a written report must be filed with the central registry. § 210.145.11.

The legislature also created, by §§ 210.-110 to 210.165, RSMo 1986, a means whereby appropriate law enforcement agencies and prosecuting officials are provided information from the reports the department receives and from its investigations. If a report is received that, if true, would constitute the criminal offense of child abuse as provided in § 568.060, the agency of the department that makes the investigation is required to contact appropriate law enforcement authorities and provide them "with a detailed description of the report received" and request the assistance of the law enforcement agency in investigating the complaint. § 210.145.5. The investigating agency of the department must also provide a detailed written report to the local prosecuting attorney. *Id.* That report specifies, in detail, the actions taken by the law enforcement authorities with respect to the reported incident of child abuse. *Id.* The agency is also required to report to the juvenile officer injuries or disabilities of children that are determined to have been caused by abuse or neglect. § 210.145.10. The investigating agency may also report those injuries or disabilities to law enforcement authorities. *Id.*

The procedures that the legislature included in §§ 210.110 to 210.165, RSMo 1986, are designed to protect children from future acts of abuse and neglect by prompt investigation. The department's role is to identify incidents of child abuse or neglect; to provide appropriate social services to prevent further abuse and neglect; and to report its findings to law enforcement officers, prosecuting officials and juvenile officers. The procedures also provide for there to be coordination between the department, law enforcement authorities and prosecuting officials. §§ 210.145.5, .9–.11. That coordination enables law enforcement personnel and prosecuting officials to assess the criminal culpability of reported acts of child abuse and neglect. If there has been a death, a report must be made to the coroner. §§ 58.451.1 and 210.115.5,

---

**2.** § 58.720 gives the same authority to medical examiners.

**3.** § 58.010, RSMo 1986, provides for there to be a coroner in each county other than certain counties of the second class and counties of the first class not having charter forms of government and "any other county which adopts the provisions of sections 58.700 through 58.765 [as permitted by § 58.760, RSMo 1986]." The second class counties in which there are no coroners are those that prior to January 1, 1975, had populations of more than 120,000 and less than 200,000.

**4.** § 58.700, RSMo 1986, provides for certain counties to have medical examiners rather than coroners. Counties that have medical examiners are those counties of the second class that prior to January 1, 1975, had a population of more than 120,000 and less than 200,000 and all counties of the first class. Other counties may, by popular vote, create the office of medical examiner in lieu of the office of coroner. § 58.765, RSMo 1986.

RSMo 1986.[5] The need for an autopsy may be assessed. As pointed out in *Lawyer v. Kernodle*, 721 F.2d 632, 634 (8th Cir.1983), the purpose of an autopsy is to assist a coroner in determining, pursuant to § 58.451, whether the death occurred as a result of criminal agency. "This determination would be the basis of the state's decision whether to pursue criminal charges." *Id.* If the department has evidence that the child whose body is sought to be exhumed died by reason of child abuse, upon making that information available to the coroner, and to law enforcement and prosecuting officials as required by § 210.115.5, RSMo 1986, that information may be evaluated and, in accordance with the statutes previously discussed, if deemed appropriate by those officials, exhumation may be sought. The decision of whether to seek exhumation, under the facts alleged by the department in its amended petition in this case, lies with those officials.[6]

The legislature has not given the department authority to authorize an autopsy. The department, therefore, does not have authority to apply for an order of exhumation for that purpose. For those reasons the department lacks legal standing to seek a court order for exhumation and autopsy. The order of the trial court dismissing the department's petition is affirmed.

All concur.

**5.** § 210.115.5, RSMo 1986, specifically requires employees of the Missouri Division of Family Services—department personnel—who have reasonable cause to suspect that a child died as a result of child abuse or neglect to report that fact to the appropriate coroner or medical examiner. That statute requires the coroner or medical examiner to investigate and report the findings from the investigation to law enforcement and prosecuting officials.

**6.** The department cites three Missouri cases for the proposition that it is not precluded from petitioning the trial court for an order of exhumation, *State v. Whiteaker*, 499 S.W.2d 412 (Mo. 1973); *State ex rel. Faris v. Eversole*, 332 S.W.2d 879 (Mo.1960); and *York v. Daniels*, 241 Mo. App. 809, 259 S.W.2d 109 (1953). None of these cases are helpful to the department. *Whiteaker* is a criminal case and as was pointed out in *Dennis v. State*, 198 Tenn. 325, 279 S.W.2d 512, 515 (1955), a Tennessee case cited by the department, a court has discretion and power in a criminal case to order exhumation and autopsy where necessity is sufficiently shown (albeit in *Whiteaker* the court did not order an autopsy). *Eversole* and *York* are cases involving civil litigation in which questions of death were issues in pending cases. In *Eversole* a request for an autopsy by an employer in a workmen's compensation case had been denied and the court held that the order denying the request was not a final order that could be appealed. In *York* an exhumation and autopsy had been performed upon authorization by a deceased's husband (the party plaintiff), the fact of which was not an issue in the case.