Mary R. Russell, Judge
The Board of Trustees of the Missouri Petroleum Storage Tank Insurance Fund, by and through the Missouri attorney general (collectively "the State"), appeals the circuit court's judgment dismissing its claims of breach of contract and, in the alternative, unjust enrichment. Respondent Pilot Travel Centers, LLC, argues the State's appeal is untimely and must be dismissed. In the alternative, it contends the circuit court correctly determined neither the Board nor the attorney general possessed standing to bring this case.
This Court finds the appeal is timely and the attorney general has authority to file this action on behalf of the Board, which has standing to sue. The circuit court's judgment of dismissal is reversed and the case is remanded.
Background
The legislature established the Petroleum Storage Tank Insurance Fund to provide owners of underground storage tanks insurance against petroleum spills or leaks. Section 319.129, et seq.[1] To manage the general administration of the Fund, section 319.129.4 establishes a Board of Trustees. The Board is responsible for "the proper operation of the [F]und, including all decisions relating to payments from the [F]und." Id. Participation in the Fund is voluntary, section 319.131.1, and storage tank owners who seek coverage must apply for admission and pay participation fees before receiving Fund benefits. Section 319.131.8.
Williams TravelCenters, Inc., purchased insurance through the Fund for its service station in Higginsville. As a participant, Williams was subject to a participation agreement, which included a subrogation clause providing that if Williams ever incurred a claim arising out of a petroleum spill that the Fund helped remediate, Williams would assign any legal rights it had against the responsible party to the Board and assist the Board in pursuing the claim. Specifically, the subrogation clause stated Williams would "cooperate with [the Board] in the investigation, settlement or defense" of any claim and "assist [the Board], upon [its] request, in the enforcement of any right" against any third-party deemed to be at fault for the actionable petroleum spill.
Williams later sold the Higginsville station to Pilot. Pilot assumed all duties under the participation agreement. It continued to annually renew its insurance coverage and reaffirm its participation in the Fund. When Pilot later discovered a petroleum spill at its service station, it filed 24 reimbursement requests, totaling *26 $732,932.30, for costs associated with remediation and cleanup. The Board honored these claims using Fund moneys.
An investigation determined the spill was caused by a defective pipe manufactured by Environ Products, Inc., and the Board, in preparation for its anticipated lawsuit against the company, contacted Pilot for assistance. Pilot failed to respond to all communications from the Board. Having received no response from Pilot, the Board filed a products liability lawsuit against Environ just before the expiration of the statute of limitations. Pilot again failed to respond to the Board's continued requests for assistance and its request that Pilot sign a standstill agreement relinquishing any future legal right of action against Environ. Having no other choice, the Board dismissed its lawsuit against Environ.
The Board, by and through the attorney general, then sued Pilot, raising claims of breach of contract and, in the alternative, unjust enrichment, "arising from Pilot's refusal to cooperate and assist in the lawsuit against Environ." Pilot filed two motions to dismiss the lawsuit, one alleging lack of standing and the other alleging failure to state a claim.
On June 22, 2016, the circuit court sustained Pilot's motion to dismiss for lack of standing, determining neither the Board nor the attorney general had authority to bring the lawsuit. The circuit court found the Board lacked standing because there was no specific statutory authority, express or implied, empowering it to maintain the civil action against Pilot. Further, the circuit court ruled the attorney general could not sue on behalf of the Board because the Fund did not implicate "the rights and interests of the state." Section 27.060.
The State timely filed an authorized after-trial motion on July 22. It requested the court "amend its judgment by vacating it" in light of this Court's decision in State ex rel. Koster v. ConocoPhillips Co. , 493 S.W.3d 397 (Mo. banc 2016), which was decided days after the circuit court's dismissal. The State later argued that another recently decided case, City of Harrisonville v. McCall Service Stations , 495 S.W.3d 738 (Mo. banc 2016), also supported its arguments. According to the State, these cases should have prompted the circuit court to vacate its judgment and allow the case to proceed on the merits. On October 11-81 days after dismissing the State's case-the circuit court vacated its order of dismissal with a docket entry labeled "Order to Vacate/Set Aside." Specifically, the order stated: "Judgment set aside. Revised judgment due 10/25/16. [Comments] by State 10 days later."
Several months later, on January 24, 2017, the circuit court entered a second judgment-an "amended judgment of dismissal." In the second judgment, the court "grant[ed] the State's Motion to Amend Judgment Pursuant to Supreme Court Rule 78.04, in part, by setting aside its June 22, 2016 Judgment of Dismissal and amending it to address the ConocoPhillips and City of Harrisonville decisions." The second judgment reiterated the State's lack of standing to sue. It "denie[d] the remainder of the Motion to Amend, and maintain[ed] its prior decision dismissing the action." The Board appeals.[2]
Standard of Review
This Court reviews a ruling on a motion to dismiss for lack of standing de novo. Lebeau v. Comm'rs of Franklin Cty., Mo. , 422 S.W.3d 284, 288 (Mo. banc 2014). It assumes all of the plaintiff's claims are *27 true "and liberally grants to [the] plaintiff all reasonable inferences therefrom." Id.
Analysis
Before reaching the underlying issues in Pilot's motion to dismiss, this Court must first confirm the appeal is timely. See Wells Fargo Bank, N.A. v. Smith , 392 S.W.3d 446, 452 (Mo. banc 2013). To be timely, the notice of appeal must be filed within 10 days after the judgment becomes final. Section 512.050. If a court lacks appellate jurisdiction, it must dismiss the appeal. Fannie Mae v. Truong , 361 S.W.3d 400, 403 (Mo. banc 2012).
I. Timeliness of the State's Appeal
Pilot argues the State failed to timely appeal the circuit court's June 22 judgment of dismissal. It contends that judgment became final pursuant to Rule 81.05 when the circuit court failed to rule on the State's after-trial motion within 90 days. And because the State failed to timely appeal the June 22 judgment, the argument follows, this case is not properly before this Court. The State, however, contends the June 22 judgment never became final or appealable as the circuit court ruled on its motion on October 11, within the 90-day required period. The October 11 docket entry was labeled "Order to Vacate/Set Aside." A new judgment-entered on January 24-was the operative final judgment, which the State appealed in a timely fashion. For the reasons set forth below, the case is properly before this Court.
A. The Governing Rules
Two procedural rules, in particular, are at the heart of the parties' arguments: Rule 75.01 and Rule 81.05. Rule 75.01 allows trial courts to "retain control[ ] over judgments during the [30]-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." Once the rule's 30-day window has expired, the judgment becomes final if neither party has filed an authorized after-trial motion. Rule 81.05(a)(1).
If any after-trial motions have been filed, the second rule-Rule 81.05-governs. In the event of a proper after-trial motion, the judgment will not become final until the earlier of "(A) [90] days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled," or "(B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or [30] days after entry of judgment, whichever is later." Rule 81.05(a)(2)(A)-(B).
These two rules, however, do not confer identical powers to the circuit court. Under Rule 75.01, a circuit court may-for any reason supported by "good cause"-amend or modify its previously entered judgment, regardless of whether a party requested such modification or amendment. Rule 81.05 is more restrictive. "Once the thirty day period in Rule 75.01 expires, a trial court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion." Massman Constr. Co. v. Mo. Highway & Transp. Comm'n , 914 S.W.2d 801, 802-03 (Mo. banc 1996).
Contrary to this Court's declaration in Massman , a number of lower court decisions have categorized the powers bestowed by Rules 75.01 and 81.05 as "the same power." See, e.g., Barr v. Sanders , 206 S.W.3d 393, 395 (Mo. App. 2006) ("The trial court retains the same degree of control over the judgment during [Rule 81.05's] ninety-day period as that provided in Rule 75.01."); Puisis v. Puisis , 90 S.W.3d 169, 172 (Mo. App. 2002) ("During *28 the ninety-day period, the trial court has the same control over the judgment as under Rule 75.01."). This line of cases may be traced back to Steiferman v. K-Mart Corp. , 746 S.W.2d 145 (Mo. App. 1988), which states: "During this 90-day period [under Rule 81.05], the court retains the same power under Rule 75.01 and may vacate, reopen, correct, amend or modify the judgment." Id. at 147. The court of appeals in Steiferman erroneously declared this principle without the guidance of any supporting authority.
The State relies on Steiferman to support its argument that the circuit court had authority to vacate its June 22 judgment because "Rule 81.05 only extends the length of the court's jurisdiction." Yet it does more-Rule 81.05 also restricts the circuit court's authority to change its judgment, in any way, by limiting the court's scope to those grounds raised in a timely filed after-trial motion. Massman , 914 S.W.2d at 802-03. To the extent Barr , Puisis , and Steiferman and their progeny imply that the powers provided by Rules 75.01 and 81.05 are the "same power," these cases should not be followed.
This Court's refusal to accept the State's reliance on those cases, however, is not fatal to its underlying timeliness argument. As explained below, the procedural posture of this case leads this Court to find the appeal timely.
B. The Legal Effect of the Circuit Court's Rulings
The circuit court entered its first judgment on June 22, dismissing the State's claims with prejudice for want of standing. One month later, on July 22, the State timely filed an authorized after-trial motion in which it requested the court "amend its judgment by vacating it."[3] Under Rule 81.05(a)(2)(A), the circuit court had 90 days to rule on the State's motion. Otherwise, it would be deemed overruled as a matter of law.
On October 11-81 days after the State filed its motion and nine days before a ruling was due under Rule 81.05-the circuit court ruled on the State's motion.[4] The court created a docket entry labeled "Order to Vacate/Set Aside." The accompanying order specifically stated, "Judgment set aside." To "set aside" means "to annul or vacate." Black's Law Dictionary 1580 (10th ed. 2014). This action was a proper exercise of the circuit court's authority under Rule 81.05 as the court granted all and only the relief requested by the State, which was essentially to vacate the judgment and allow the case to proceed, and it did so within its 90-day limitation. As such, the State's motion was sustained by the October 11 order. See Rule 81.05(a)(2); see also Massman , 914 S.W.2d at 802-03.
According to the dissent, the October 11 order did not grant the relief requested by the State but instead "set[ ] a timetable for the parties to submit proposed amended judgments, with Respondent's proposal due on October 25 and the State's response due 10 days later." Op. at 34. Indeed, there was some future action to be *29 taken after the October 11 order, as the order indicated a "revised judgment [was] due 10/25/16" and scheduled a case status review weeks after that. And as the dissent acknowledges, the parties complied with that order. Pilot filed a proposed amended judgment on October 25, and the State responded to this proposal three days later.
With this continuing litigation, it is evident the parties understood the October 11 order constituted a ruling on the State's motion, as it vacated the June 22 judgment. Had the circuit court not done so, there would have been no further action for the parties or the court to take. The State's motion would have been overruled by operation of law on October 20, 90 days after the State's motion, and the June 22 judgment would have become the final judgment. To be sure, the Rule 81.05 window created by the State's motion did not expire because the October 11 order vacated the first judgment.[5] At that point, the 90-day time limit imposed by Rule 81.05 ceased to exist.
There was no further action to be taken on the June 22 judgment because, after the October 11 order, the June 22 judgment did not exist. In fact, no judgment existed until the circuit court entered its second judgment in January. Contrary to Pilot's suggestion, the June 22 judgment never became final, and the circuit court never lost jurisdiction over the matter. See State v. Schierhoff , 103 Mo. 47, 15 S.W. 151, 152 (Mo. 1891) ("A court does not lose jurisdiction of a case till final judgment be rendered."). As such, the circuit court retained jurisdiction to enter the eventual January 24 judgment.
This is not to say, however, that the procedural posture of this case is without missteps. After the circuit court entered its first judgment on June 22, the State filed a motion to amend the judgment by vacating it. The circuit court timely ruled on the motion in its October 11 order, which granted the full relief requested by the State and provided the circuit court would later enter a revised judgment. When the circuit court entered the second, amended judgment of dismissal on January 24, it was 186 days after the State filed its after-trial motion. This attempted ruling was well outside the 90-day window set out in Rule 78.06.[6] Simply put, though the circuit court retained jurisdiction over the case, it was not authorized to "rule on" the State's after-trial motion when it entered its January 24 judgment. That judgment, therefore, is voidable:
[When] the power of the court to act is subject to certain limitations, named, then the judgment of the court rendered in violation of the things stated, or contrary to the limitations named, then such order or judgment of the court is not *30 void for want of jurisdiction, but voidable only....
Smith v. Black , 231 Mo. 681, 132 S.W. 1129, 1132-33 (Mo. 1910), overruled in part on other grounds by Miller v. Staggs , 266 Mo. 449, 181 S.W. 116 (Mo. banc 1915). "[A] judgment which is voidable is capable of confirmation or ratification, and until superseded, reversed, or vacated, it is binding and enforceable." 46 Am. Jur. 2d Judgments § 24 (2018).
As such, the circuit court's second judgment, though entered without authority, is nevertheless the operative final judgment unless its validity was properly challenged. Failure to challenge a court's authority to take some action waives a party's right to challenge that action. Hightower v. Myers , 304 S.W.3d 727, 733 (Mo. banc 2010). By neglecting to challenge in the circuit court the court's authority to enter the second judgment, Pilot waived any available challenge to the judgment's validity, and the second judgment became the final judgment from which the State could appeal.[7] The State timely did so, and the case is properly before this Court.
II. Standing
A. The Attorney General May Sue on Behalf of the Board
The State and Pilot both present arguments as to whether the attorney general himself has standing to initiate a lawsuit against Pilot in this matter. The State argues the circuit court erred in finding the attorney general lacked standing to sue Pilot on the Board's behalf. The circuit court determined the attorney general possessed no power to bring a lawsuit because the legislature has not explicitly delegated any authority to the attorney general to bring such a case and because, according to the circuit court, the Fund implicates no "rights and interests of the state." Section 27.060.
The parties' focus on whether the attorney general himself has standing independent of its authority to bring suit on behalf of the Board is a red herring. The attorney general is empowered to represent the Board under section 27.060, which provides the attorney general with the power to "institute ... all civil suits and other proceedings at law or equity requisite or necessary to protect the rights and interests of the state." Though the circuit court found "the Fund is not a right or interest of the state," this Court disagrees.
The Fund plainly implicates state interests. The attorney general has the authority "to seek enforcement of the legislature's statutory purposes." Fogle v. State , 295 S.W.3d 504, 510 (Mo. App. 2009). The legislature created the initial petroleum insurance fund to "assist with cleanup of contamination caused by leaking tanks," which serves the purpose of "limiting environmental and public health hazards from leaking underground storage tanks containing regulated substances." Rees Oil Co. & Rees Petroleum Prods., Inc. v. Dir. of Revenue , 992 S.W.2d 354, 356 (Mo. App. 1999). Naturally, the legislature's statutory purposes in enacting section 319.129 included aiding owners of petroleum storage tanks in remedying any leaks or spills, and the participation agreements *31 into which the parties entered allowed the Board to do just that.
Here, the Board is "the real party in interest seeking recovery [from Pilot]." ConocoPhillips , 493 S.W.3d at 403. "The attorney general is merely representing the Board, at the Board's request, as he is authorized to do." Id. at 403-04. Accordingly, this Court need not address the attorney general's own potential standing to sue Pilot. He is authorized to do so on behalf of the Board under section 27.060.
B. The Board Has Standing to Sue
Next, the State argues the circuit court was incorrect when it determined the Board lacked standing to sue Pilot for its failure to cooperate in the State's attempted lawsuit against Environ. The State claims entering into subrogation contracts with Fund participants is an "inherent task[ ]" in the general administration of the Fund. Pilot's arguments, meanwhile, are twofold. It first argues the Board lacks standing because no statute gives the Board the authority to sue other entities, such as the one at the heart of this case. Further, it suggests the Board has no authority to enter into the underlying subrogation contracts with Fund participants. For ease and clarity, this Court addresses Pilot's second argument first.
Pilot contends the Board lacks authority to enter into subrogation contracts because no statute provides such a right, expressly or impliedly. Further, because the Board never had authority to enter into these subrogation contracts in the first place, Pilot claims, the Board does not have standing to sue for an injury arising out of a contract that is ultimately unenforceable.
As a creature of statute, the Board's "powers are limited to those conferred by ... statutes, either expressly, or by clear implication as necessary to carry out the powers specifically granted." State ex rel. MoGas Pipeline, LLC v. Mo. Pub. Serv. Comm'n , 366 S.W.3d 493, 496 (Mo. banc 2012) (alteration in original). The enabling statutes do provide the Board with certain express contracting powers: (1) to enter into contracts with other state agencies for staffing purposes, see section 319.129.9; (2) to hire individuals to carry out the management and legal defense of the Fund, see section 319.129.10; (3) to commission audits of the Fund, see section 319.129.17; (4) to hire third parties to carry out training programs for Fund participants, see section 319.130.3; and (5) to purchase reinsurance for the Fund, see section 319.129.15. Pilot argues the Board's contracting powers are limited to this express list-arguing, in effect, in favor of applying the canon expressio unius est exclusio alterius : "the express mention of one thing implies the exclusion of another." Simpson v. Simpson , 352 S.W.3d 362, 364 n.1 (Mo. banc 2011).
But that maxim "is to be used with great caution." Six Flags Theme Parks, Inc. v. Dir. of Revenue , 179 S.W.3d 266, 270 (Mo. banc 2005) (internal quotation omitted). "The maxim should be invoked only when it would be natural to assume by a strong contrast that which is omitted must have been intended for the opposite treatment." Id. In other words, it must be clear from the statute that the legislature intended for the Board to not possess the power of entering into subrogation contracts with Fund participants.
If the Board's powers were truly limited to those five express functions, its ability to carry out "the general administration of the [F]und" would be severely limited. It would be unable to contract with experts, such as environmental engineers, to "determine the extent of the leak[s]" and prepare remedial actions, as in City of Harrisonville , 495 S.W.3d at 743. It would be *32 unable to contract with other third parties, if necessary, to facilitate and manage spill cleanups. And finally, it would be unable to contract for the terms and conditions of coverage the Fund provides to Fund participants. Indeed, it would be practically impossible for the Board to successfully oversee the administration of the Fund if its contracting powers were limited to those explicitly enumerated in the statute. Rather, it is logically vested with implicit contracting powers beyond those expressly listed in chapter 319.
It is the Board's responsibility, as custodian of the Fund, to oversee its facilitation. "[T]he Fund is merely an account and only its Board of Trustees is responsible for the administration and operation of the Fund." Id. at 752 (emphasis added). Entering into subrogation contracts with Fund participants governing the terms and conditions of Fund coverage is a necessary component of ensuring the efficient and proper administration of the Fund as well as in making "all decisions relating to payments from the [F]und." Section 319.129.4. And if the Board can enter into these contracts to operate the Fund, it necessarily must be able to sue to recover damages for a breach of those contracts. See ConocoPhillips , 493 S.W.3d at 404 ("The Board certainly has the right to sue to recover moneys owed to the Fund, see § 319.129.4....").[8] Accordingly, the Board has standing to sue for breaches of the contracts it enters into to carry out the general administration of the Fund.
Conclusion
The State's appeal is timely. The attorney general has authority to file this action on behalf of the Board, which has standing to sue. Accordingly, the circuit court erred in dismissing the State's claims for lack of standing. Because this is dispositive, the Court declines to address the State's arguments on its unjust enrichment claim. The judgment is reversed and the case is remanded for proceedings consistent with this opinion.
Draper, Powell, Breckenridge, and Stith, JJ., concur;
Wilson, J., dissents in separate opinion filed;
Fischer, C.J., concurs in opinion of Wilson, J.
DISSENTING OPINION
Paul C. Wilson, Judge
The principal opinion concludes a circuit court's authority to act under Rule 81.05 is more limited than its authority to act under Rule 75.01. I agree. But the principal opinion misapplies this well-established principle and holds the state's appeal was timely. Accordingly, I must respectfully dissent.
On June 22, 2016, the circuit court entered its judgment of dismissal. Thirty days later, the state filed a motion titled: "Plaintiff's Motion to Amend the Judgment, Pursuant to Supreme Court Rule 78.04." Oxymoronically, the first sentence of this motion to amend the judgment states: "In light of the Missouri Supreme Court's recent opinion in State ex rel. Koster v. ConocoPhillips Co. ,, this Court should vacate its judgment in this matter." [Emphasis added.] The true nature of the state's motion, however, is revealed in the final sentence of that pleading: "Based *33 on the foregoing, the State moves the Court to amend its judgment by vacating and allowing this case to proceed with respect to Count I and Count II of the second amended petition." [Emphasis added.] See Labrayere v. Bohr Farms, LLC , 458 S.W.3d 319, 334-35 (Mo. banc 2015) (this Court looks to "the substance of the pleading, not the title").
Regardless of whether the motion was an "authorized after-trial motion" for purposes of Rule 81.05(a)(2), which seems doubtful, or whether Pilot waived that issue, which the principal opinion holds it did, the circuit court only had authority to grant (or deny) the relief sought in the state's motion on the grounds asserted therein once the 30-day period following the entry of judgment lapsed. See Massman Constr. Co. v. Mo. Highway & Transp. Comm'n , 914 S.W.2d 801, 802-03 (Mo. banc 1996) ("Once the thirty day period in Rule 75.01 expires, a trial court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion."); Stein v. McDonald , 394 S.W.2d 297, 300 (Mo. 1965) ("As to this ground, the court could not have ordered a new trial on its own motion because more than 30 days had elapsed from the time of filing of the motion, and the trial court had lost control of the judgment except as to matters properly presented in said motion."); Loveless v. Locke Distrib. Co. , 313 S.W.2d 24, 27 (Mo. 1958) ("Since this was done more than 30 days after entry of judgment, the trial court could not order the new trial of its own initiative, or an any ground not specified in the motion.").[1] Under Massman and its predecessors, therefore, because the circuit court did not act under Rule 75.01 within 30 days, it had authority only to: (1) grant the relief sought in the state's motion on the grounds asserted; (2) deny that relief outright; or (3) in the absence of either of those rulings within 90 days, have the state's motion deemed overruled by operation of Rule 81.05(a)(2)(A).
Notwithstanding these clear limitations, there is some ambiguity as to what the circuit court did or tried to do:
• On October 11, 2016-81 days after the Board filed its motion-the circuit court signed a docket entry stating: "Judgment [dated June 22, 2016] set aside. Revised judgment due 10/25/16. [illegible] & State 10 days later."
• On January 24, 2017-186 days after the state filed its motion-the circuit court signed and entered an "Amended Judgment of Dismissal." This "Amended Judgment" states at the outset:
On this 24th day of January, 2017, 2016 [sic], the Court takes up and considers Plaintiff's Motion to Amend Judgment Pursuant to Supreme Court Rule 78.04 ("Motion to Amend"), along with all related briefing and authorities cited therein. The Court hereby grants the Motion to Amend , in part, by setting aside its June 22, 2016, Judgment of Dismissal and amending it to address two Missouri Supreme Court decisions, which were handed down after this Court's original Judgment. However, for reasons set forth below, the Court denies the remainder of the Motion to Amend, and maintain its prior ruling that this *34 cause of action should be, and hereby is, DISMISSED with PREJUDICE. [Emphasis added.]
This "Amended Judgment" ends with the following:
For the reasons set forth above, this Court hereby grants the State's Motion to Amend Judgment Pursuant to Supreme Court Rule 78.04, in part, by setting aside its June 22, 2016 Judgment of Dismissal and amending it to address the ConocoPhillips and City of Harrisonville decisions. However for the reasons set forth above, the Court denies the remainder of the Motion to Amend, and maintains its prior decision dismissing this action. Accordingly, it is now ORDERED, ADJUDGED and DECREED that this case is dismissed, with prejudice, in favor of Defendant and against Plaintiff. SO ORDERED. [Emphasis added.]
The circuit court's actions on October 11, 2016, and January 24, 2017, cannot be reconciled. Under Massman , the only action the circuit court was authorized to take on October 11 was to sustain (or overrule) the state's motion on the grounds set forth in that motion. The state's motion asked the circuit court to "amend its judgment by vacating and allowing this case to proceed with respect to Count I and Count II of the second amended petition," and-at first glance-the circuit court's October 11 order appears to grant that relief in that it states the "Judgment [dated June 22, 2016, is] set aside."
But this interpretation is belied by the January 24, 2017, "Amended Judgment." There, the circuit court-in multiple places-expressly states it is ruling on the state's motion dated July 22, 2016. It is certain that by January 24, 2017, the state's motion was no longer before the circuit court. Either the circuit court sustained that motion on October 11, 2016, or the motion was overruled by operation of law nine days later (i.e., on the 90th day after it was filed). Either way, on January 24, 2017, the circuit court could not have been ruling-as the amended judgment states it was-on the state's motion.
So, either this Court must give effect to the October 11 docket entry and treat the amended judgment as though it were entered sua sponte (notwithstanding the plain and repeated language of the amended judgment stating the circuit court was ruling on the state's motion), or this Court must take the October 11 docket entry for what it very plainly was, i.e., an attempt to extend the circuit court's time to rule on the state's motion beyond the 90-day window allowed by Rule 81.05(a)(2)(A). This latter approach is the more faithful to the language and actions of the circuit court, and a closer look at the October 11 order shows this is what the circuit court was attempting to do.
The October 11 order did not-and was never intended to-grant the relief sought by the state's motion on the grounds asserted therein, which is the only action (other than overruling the motion outright) the circuit court could take at that time under Massman . Instead, the October 11 order sets a timetable for the parties to submit proposed amended judgments, with Pilot's proposal due October 25 and the state's response due 10 days later. The parties complied. Pilot filed a proposed amended judgment on October 25. On October 28, the state informed the circuit court it disagreed with the proposed amended judgment but offered only minimal changes to it to "provide accuracy and consistency in terminology." Thereafter, the docket sheet reveals no further actions until, nearly three months later, the circuit court signed and entered the amended judgment dated January 24, 2017, stating the circuit court was "setting aside its June 22, 2016 Judgment of Dismissal and amending it to address the ConocoPhillips *35 and City of Harrisonville decisions." Plainly, the circuit court's October 11 order improperly attempted to extend either its authority to act under Rule 75.01 (which had lapsed 81 days earlier, i.e., the day the state's motion was filed) or its authority to sustain the state's motion (which, under Massman and Rule 81.05(a)(2)(A), would lapse on October 20).
Under Massman , there is no action a circuit court can take to extend its time for acting pursuant to Rule 75.01 beyond 30 days, or to extend its time for acting on an authorized post-trial motion beyond the 90-day period set forth in Rule 81.05(a)(2)(A). Accordingly, the circuit court's attempt to achieve one or the other (or both) with the October 11 order was for naught. Because the circuit court neither sustained the state's motion on the ground(s) presented nor overruled that motion outright, that motion was overruled by operation of Rule 81.05(a)(2)(A) on the 90th day after it was filed. The state then had 10 days from that date to file its notice of appeal challenging the June 22, 2016, judgment. Because it failed to do so, this appeal should be dismissed as untimely filed.

All statutory references are to RSMo 2000 unless otherwise specified.

This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

Pilot does not argue the State's motion was not an authorized after-trial motion. Accordingly, Pilot waives any argument that the State's motion was not an authorized after-trial motion pursuant to Rule 81.05(a)(2).

Pilot relies on Ferguson v. Curators of Lincoln University , 498 S.W.3d 481 (Mo. App. 2016), and In re Marriage of Noles , 343 S.W.3d 2 (Mo. App. 2011), in support of its argument that the October 11 order was insufficient to "rule on" the State's motion. These cases analyze whether a motion to amend was "ruled on" for purposes of Rule 81.05. For the reasons stated in footnote three, these cases are inapplicable here.

The dissent suggests this interpretation "is belied by the January 24, 2017, 'Amended Judgment' " because the January judgment expressly stated that it was ruling on the State's after-trial motion. Op. at 33-34. As the dissent points out, the circuit court could not have been ruling on a motion on which it had already once ruled. But the dissent does not explain how a court order-one explicitly vacating a judgment-should be ignored due to the erroneous wording of a subsequent judgment entered more than three months later. That the January 24 judgment incorrectly stated the circuit court was "ruling on" the previously disposed after-trial motion does not change the fact that a prior ruling occurred on that motion when the circuit court vacated the judgment in its October 11 order. Despite the second judgment's misgivings, it does not render the October 11 order hollow.

Nor can the January judgment be deemed an amendment on the circuit court's own initiative, as it had the authority to do so only within 30 days of the entry of judgment. Rule 75.01.

The dissent states the "circuit court's actions on October 11, 2016, and January 24, 2017, cannot be reconciled." Op. at 34. This Court does not disagree nor attempt to reconcile these rulings on their face. As explained above, the January 24 judgment purporting to "rule on" the State's motion was voidable because it exceeded the circuit court's authority. Because Pilot did not challenge the circuit court's authority to enter this judgment, the January 24 judgment became the final, appealable judgment.

Pilot argues this case should be guided by Missouri Public Service Commission v. Oneok, Inc. , 318 S.W.3d 134 (Mo. App. 2009) and In re Exhumation of Body of D.M. , 808 S.W.2d 37 (Mo. App. 1991). Because these cases are inapplicable and unpersuasive, they do not preclude the Board's standing here.

Cases in the court of appeals purporting to hold an authorized after-trial motion extends the circuit court's authority under Rule 75.01 an additional 90 days clearly are wrong and should no longer be followed. See, e.g., Barr v. Sanders , 206 S.W.3d 393 (Mo. App. 2006) ; Puisis v. Puisis , 90 S.W.3d 169 (Mo. App. 2002) ; Klaus v. Shelby , 4 S.W.3d 635 (Mo. App. 1999) ; Steiferman v. K-Mart Corp. , 746 S.W.2d 145 (Mo. App. 1988).